## THE STATE v. DAVE CREELEY, Appellant.

**Division Two, January 6, 1914.**

1. **RECEIVING STOLEN WATCH: Evidence That it was Stolen.** Testimony by the owner that he placed his watch under his pillow about half-past seven o'clock a. m. and missed it about eight o'clock p. m. of the same day, but did not know anything about how it was taken from his premises, is sufficient evidence that the watch had been stolen from him to support a conviction of the crime of receiving stolen goods, knowing it to have been stolen. The statement that he did not know anything about how it was removed from his premises was equivalent to stating he did not authorize anyone to remove it or take it away, and if he had testified that the watch was stolen that would have been only the expression of an opinion.

2. **INSTRUCTION: Former Conviction: Based on Defendant's Admission: Credibilty.** Where the evidence of defendant's for-

mer conviction of larceny consisted of his own voluntary testi-
mony alone and was not produced by the State for the purpose
of affecting his credibility as a witness, an instruction asked
by the State telling the jury that "the evidence as to the prior
conviction of defendant was admitted solely for the purpose
of affecting his credibility as a witness, and not for the purpose
of being considered by the jury on the question of his guilt or
innocence as to the offense for which he is now on trial," is
*rroneous, but it is not reversible error, because more favorable
to the defendant than to the State, since it minimized and
limited the effect of his admission that he had previously been
convicted.

3. ———: **Defendant's Statements: Negatived by Proof.** In
this case the instruction referring to statements and admissions
made by defendant, and telling the jury that "what defendant
said against himself, if anything, the law presumes to be true,
unless negatived by some other evidence in the cause," does
not refer to defendant's testimony as a witness in the cause,
but to statements made by defendant out of court after the
offense was committed and "proved by the State."

4. ———: ———: **No Basis for Instruction.** And the State
proved a number of extrajudicial statements and admissions
made by defendant which furnished a sufficient basis of fact
for said instruction.

5. ———: ———: **Requiring Defendant to Testify.** Nor did
the words in said instruction "unless negatived by some other
evidence in the case" force defendant to take the stand and
deny the incriminating admissions made by him out of court
and proven by the State. A statement made by a defendant
against his interest may be negatived in many ways without
requiring him to be sworn.

6. ———: **For What Purpose Defendant's Admission may be
Considered: Comment on Evidence.** Nor was such instruction
an erroneous comment upon the evidence regarding the state-
ments and admissions against interest made by defendant before
the trial. When the State has proven that defendant, after
the commission of a crime and before trial, made statements
tending to show his guilty connection with the crime, the jury may
be instructed that they may believe what he has said against
himself and reject what he may have said tending to establish
his innocence. Such an instruction is undoubtedly a comment
upon certain parts of the evidence, but it does not constitute
reversible error, for the reason that, while courts are pro-
hibited generally by statute from selecting certain parts of
the evidence and telling the jury how they shall weigh it,
there are certain classes of evidence which, by other statutes,
are made presumptive proof of certain things. The true rule

State v. Creeley.

is that, when certain evidence is introduced which, under the statutes or common law as it now exists in this State, is entitled to less or more weight than ordinary evidence, it is not error for the court to instruct the jury how such evidence is to be weighed.  Such instructions are the comment of the law, or the rule which the law has prescribed for determining the effect of such special classes of evidence, and form statutory exceptions to the general rule (which is itself prescribed by Sec. 5244, R. S. 1909), that courts are not in their instructions to single out and comment on evidence.

7. ———: ———: ———: **Useless.**  But such an instruction is useless, and for that reason should not be given.  The weight and effect of oral admissions made by defendant before the trial can safely be left to the jury, without being emphsized by a special instruction calling attention to them.

8. **CONTINUANCE: Withdrawal of Counsel.**  Motions for a new trial do not prove themselves, and where the only basis for appellant's claim that his first lawyer withdrew from the case is an assertion to that effect in his motion for a new trial, it cannot be held that his said attorney did withdraw from the case, or that the court erred in not granting defendant a continuance on the ground of such alleged withdrawal.

Appeal from St. Louis City Circuit Court.—*Hon. W. M. Kinsey,* Judge.

AFFIRMED.

*Henderson & Henderson* and *W. Raleigh McCormick* for appellant.

(1)  Defendant's instruction in the nature of a demurrer requested at the close of the State's case, should have been given.  There is no proof that the property mentioned in the information was stolen.  State v. Smith, 37 Mo. 68; State v. Honig, 9 Mo. App. 298; State v. Honig, 78 Mo. 249; State v. Fink, 186 Mo. 50.  There was no proof that defendant knew that it was stolen.  State v. Smith, 37 Mo. 58; Regina v. Droge, 14 Cox C. C. 83; State v. Fink, 186 Mo. 50. (2) Instruction number 5 should not have been given because it was erroneous.  (a)  It erroneously declares that as a matter of law statements proved by the State to

have been made by the defendant adverse to his interest are presumed to be true if not negatived. State v. Hudspeth, 150 Mo. 12; State v. Hollingsworth, 156 Mo. 178. (b) It erroneously assumed that the defendant did make incriminating statements; whereas the only statements defendant made were that he would not talk, and the giving of wrong places of location of several of the articles. State v. Little, 67 Mo. 624. (3) The court erred in giving instruction numbered 4, in that the court declared therein that the evidence in this case of the prior conviction of defendant was admitted solely for the purpose of affecting the credibility of the defendant as a witness. This was not the fact. This testimony of the prior conviction was adduced by defendant himself, as part of the *res gestae* and part of his defense. This instruction is not predicated upon fact; it was a comment on the evidence not required as a caution, and was highly prejudicial to defendant's rights. State v. Barrington, 198 Mo. 126; Benjamin v. Railroad, 245 Mo. 615; Stetzler v. Railroad, 210 Mo. 712. (4) The court erred in refusing defendant's motion for a continuance. Constitution of Missouri, art. 2, sec. 22; State v. Lewis, 74 Mo. 222.

*John T. Barker,* Attorney-General, and *Thomas J. Higgs,* Assistant Attorney-General, for the State.

(1) The defendant in the motion for a new trial states that error was committed in the giving of court's instruction numbered 5; that the same was a comment upon the evidence and discriminating between the weight to be given statements made by defendant and made by other persons, and for the reason that it erroneously declares that as a matter of law, statements made by the defendant, adverse to his interest, are presumed to be true; and that said instruction was further erroneous in assuming that the

254 Mo. 25

defendant did make incriminating statements. This instruction is the usual instruction as to statements made by the defendant after the commission of an offense, and has been often approved by this court. State v. Howell, 117 Mo. 323; State v. Duestrow, 137 Mo. 67. (2) In the motion for a new trial, error is alleged concerning the counsel whom the defendant had employed, and who was entirely familiar with the case, suddenly withdrawing as counsel as the case was called for trial; and that said counsel stated, in the presence of the jury, as his reason for said action, that the defendant would not state the truth in regard to the case. Further, that the defendant was compelled to go to trial with a counsel who was not acquainted with the case and had no time to prepare the same. The record does not disclose any such proceedings as alleged in this subdivision of the motion for a new trial. Matters not made a part of the bill of exceptions are not before this court for review. State v. Page, 212 Mo. 224; State v. Jeffries, 210 Mo. 234; State v. Field, 234 Mo. 615. (3) The evidence was ample and sufficient to sustain the verdict that was returned by the jury. The defendant had concealed and disposed of the property, had taken another name, and had told various stories, all of which showed the knowledge that he was guilty in knowing that this was stolen property. Under these circumstances the courts have frequently held that they will not disturb the verdict of the jury. State v. Bass, 251 Mo. 107; State v. Concelia, 250 Mo. 411; State v. Glahn, 97 Mo. 679; State v. Howell, 100 Mo. 659.

BROWN, P. J.—Defendant appeals from a judgment of the circuit court of St. Louis city, in which court he was convicted and adjudged to serve a term of two years in the penitentiary for the crime of receiving stolen goods.

He was charged with receiving a gold watch worth $150, and several other articles of jewelry, which had been stolen from one Henry W. Gildehaus, a resident of St. Louis. Mr. Gildehaus fully identified the property described in the information as belonging to him, but his explanation of how some of it passed out of his possession is vague.

The strongest testimony indicating that any of it was stolen relates to the gold watch. Mr. Gildehaus testified that he placed the watch beneath his pillow about half-past seven a. m. on March 20, 1912, and "missed it" about eight o'clock p. m. of the same day, but he did not know anything about how it was taken from his premises. The other articles found in defendant's possession were missed by Mr. Gildehaus on the same day. He was not asked, and did not state, whether he gave anyone permission to take the watch from his home. In his household were his wife, two sons and four servants.

No witness gave any direct evidence of the larceny. So far as the original theft is concerned, the conviction rests solely on the evidence of the owner, Mr. Gildehaus, that he placed the watch under his pillow in his home and *does not know anything about how it was taken away from there.* The next time he saw the watch it was at the office of the detectives who recovered it for him.

After the watch and other jewelry were missing from the residence of Mr. Gildehaus, they were found in a small grip or handbag, left in Mrs. Herzog's rooming house in St. Louis by two men named, respectively, Miller and Callahan.

Mrs. Herzog testified that two men rented a room from her on the afternoon of March 20, 1912, and went away leaving the handbag and a suitcase in their room. On March 26, 1912, defendant came to her rooming house and told her his name was J. C. Jones, and asked her for the small handbag, which contained the

jewelry. She gave the handbag to defendant after he had procured another man to identify him as "J. C. Jones."

Two or three days later defendant obtained from Mrs. Herzog the suitcase. On that trip he showed her a letter, purporting to come from Chicago, thanking her for taking care of the grips and sending her two dollars to pay for the key to the room they had rented. The letter was not introduced in evidence. Miller and Callahan had paid their room rent in advance and did not owe Mrs. Herzog anything.

Defendant, testifying in his own behalf, stated that on or about March 6, 1912, he was placed in the St. Louis jail on a charge of larceny, of which he was afterward convicted. That while he was in jail Miller and Callahan were also arrested and placed in the same jail; that on March 26, 1912, defendant told Miller he was about to be released on bond, whereupon Miller requested him to go to Mrs. Herzog's rooming house and get the small grip, or handbag, which he (Miller) had left there and take out some clothes and send them to him.

Defendant further testified that he was trying to carry out this request of Miller when he obtained the grips from Mrs. Herzog; that he did not know the small handbag contained jewelry until he opened it. Defendant further testified that when a police officer called he gave him the grips and aided the officer in securing the jewelry. He also stated that he could not remember showing Mrs. Herzog a letter purporting to come from Chicago thanking her for caring for the grips; that he told Mrs. Herzog his name was Jones because the newspapers had published an account of his arrest, and he feared she would not let him have the grips if he gave her his true name. He admitted that he told Mrs. Herzog that Miller and Callahan were friends of his, but further acknowledged that they were not in fact his friends. Defend-

ant further admitted that he found in the small grip obtained from Mrs. Herzog the watch and other jewelry identified by Mr. Gildehaus, together with three revolvers, a flashlight and a kit of burglars' tools, but he explained that he did not know what the searchlight and burglars' tools were, and did not know that any of the property had been stolen when he received it. He also stated that he did not remember ·telling officer O'Brien that he had sold the watch to a man who had gone to Oklahoma.

Mr. John T. May testified on behalf of defendant that he furnished the bond whereby defendant was released from jail on March 26, 1912; that while returning from the jail with defendant the latter stopped at Mrs. Herzog's and procured the small handbag containing the Gildehaus jewelry. When they reached May's home defendant opened the handbag, saying: "I must take out some clothes and have them laundered." That when defendant opened the grip, or handbag, and found the jewelry and other articles he seemed to be surprised, and remarked that he had gotten the wrong grip. On opening the grip defendant took out and handed to May a "half hose" containing the burglars' tools and three revolvers, remarking at the time, "I would not want it found at my house." Defendant took out the jewelry and placed it in his pocket, saying at the time, "This belongs to those fellows, evidently."

M. J. O'Brien, a detective of the police force of St. Louis, testified that on about April 6, 1912, he went to the home of defendant's father and called for the grip and suitcase that had been taken from Mrs. Herzog's rooming house to the residence of Mr. May. At first, defendant said that he did not know anything about the grips; but after some conversation he took the officer into his father's house and gave him the grip and handbag, saying, "Now, here's the grips." Defendant then told the officer that he did not care to

talk about it further. Officer Dougherty testified that he saw defendant conversing with Callahan in jail on March 25, 1912.

On being asked where the burglars' tools were defendant replied that he did not know anything about them; that "the grips were empty and did not contain anything that belonged to those men."

After the defendant was arrested and taken to police headquarters he admitted that they were left at the house of Mr. May, his bondsman. The officer found the burglars' tools in May's cistern, and the next morning he asked defendant about the watch and jewelry which he had taken from the small grip, or handbag. At first, defendant stated that he did not know anything about the jewelry. Later in the same conversation he told the officer that he had sold the watch to a man who had gone to Oklahoma. Subsequently he admitted that he had loaned the watch to one A. J. Dahl, and accompanied the officer to the residence of Mr. Dahl, where the watch was procured.

Defendant, according to officer O'Brien's testimony, did an equal amount of prevaricating about the other articles of jewelry, but upon the urgent request of the officer he gathered up said jewelry and turned it over to the officer.

A. J. Dahl testified that he had known defendant six years; that defendant gave him the watch stating that it belonged to a particular friend of his, and that he (defendant) did not want to carry it that day as he was going out and might lose it.

For reversal defendant relies upon the alleged insufficiency of the evidence to prove that the watch and other jewelry were stolen from the owner, Mr. Gildehaus; and also complains of alleged errors in the instructions to the jury.

I. Defendant's first assignment challenges the sufficiency of the evidence to prove that the jewelry

which he is charged with feloniously receiving was

**Evidence of Theft.** stolen from the owner, Mr. Gildehaus. This is more a question of fact than of law. That there must be substantial evidence of the theft of property which defendant is charged with having received, cannot be disputed. Is that proof present in this case? No witnesses saw the jewelry stolen. If the owner had testified that his watch was stolen that would only have been the expression of an opinion, because he did not see it stolen. He merely stated that he put the watch under his pillow and knew nothing about how it was taken away. His evidence would have been much stronger had he testified that he did not authorize anyone to take the watch away from where he placed it or dispose of it in any manner. However, we think his statement that he did not know anything about how it was removed from his house was equivalent to stating that he did not authorize anyone to remove it or take it away. If he had authorized anyone to take the watch, he would, necessarily, have possessed some knowledge of how it came to be removed; so that his undisputed evidence must be taken to mean that the watch was stolen from under his pillow.

If it were necessary to prove the crime of larceny by someone who actually saw the offense committed, we opine there would be few convictions for that crime.

The taking away of inanimate property without the knowledge of its owner from the place where the owner has left it in his own home, in the absence of countervailing evidence, raises the presumption that such property was asported by a thief.

The cases relied upon by defendant are entirely unlike the one at bar. The Smith case (37 Mo. l. c. 68) merely holds that to sustain a conviction of knowingly receiving stolen goods it must be proven that the goods had in fact been stolen. That is undoubtedly

true. The two Honig cases (9 Mo. App. 298, and 78 Mo. 249) announce the rule that evidence of larceny committed by defendant is not sufficient to sustain a charge against him of receiving stolen goods; while the Fink case (186 Mo. 50) simply holds that a charge of receiving *stolen* goods is not sustained by -proof that the goods were embezzled. Defendant's first assignment must be overruled.

II. Error is also assigned in the second clause of the State's instruction numbered 4, which reads as follows:

Former Conviction.

"You are further instructed that the evidence in this case as to the prior conviction of defendant was admitted solely for the purpose of affecting the credibility of the defendant as a witness, and not for the purpose of being considered by the jury on the question of the guilt or innocence of the defendant as to the offense for which he is now on trial."

This instruction is really erroneous. The evidence of defendant's former conviction comes through his own voluntary statement as a witness and was not proven by the State for the purpose of affecting his credibility as a witness. We find, however, that this instruction was more favorable to the defendant than to the State. It limited and minimized the injurious effect of his admission that he had been convicted of larceny, and, therefore, did not operate to his prejudice in any respect. [State v. Burk, 234 Mo. 574, l. c. 579; State v. Hunter, 181 Mo. l. c. 337; and State v. Stewart, 90 Mo. 507.]

III. Defendant earnestly insists that the court erred in giving instruction numbered 5, which reads as follows:

Statements Against Interest.

"If you believe and find from the evidence that the defendant made any voluntary statement or statements in relation to the offense charged in the information after such offense is alleged

to have been committed, you must consider such state-
ment or statements all together, and in the light of the
circumstances under which you may believe they were
made. The defendant is entitled to what he said
for himself, if true, and the State is entitled to the
benefit of anything he may have said against him-
self in any statement or statements proved by
the State. What the defendant said against him-
self, if anything, the law presumes to be true, *unless
negatived by some other evidence in the cause,* be-
cause said against himself. What the defendant said
for himself the jury are not bound to believe, because
it was said in a statement or statements proved by
the State, but the jury may believe or disbelieve it as
it is shown to be true or false by the evidence in this
cause; it is for the jury to consider, under all the facts
and circumstances in evidence, how much of the whole
statement or statements of the defendant proved by
the State the jury, from the evidence in this case, deem
worthy of belief.''

It is first contended that this last-quoted instruc-
tion refers to defendant's evidence as a witness in
court, and for that reason is erroneous, but we find
that this view is not tenable. A careful reading of said
instruction demonstrates that it refers to statements
alleged to have been made by the defendant and
''proved by the State.''

Defendant's counsel contend that there were no
extrajudicial statements or admissions made by the
defendant tending to establish his guilt. This con-
tention is likewise unsound. If the State's evidence be
true, the defendant told Mrs. Herzog that his name
was Jones when he applied for the small grip. Three
days later when he applied for the large grip he showed
her a letter purporting to be from Chicago, and indi-
cating that the owners of the grips were in Chicago,
while he knew that they were then in the St. Louis
jail. The evidence of Mrs. Herzog, if true, proved

statements by defendant against his interest, because it tended to establish the charge that he knew the property he was receiving had been stolen, and by giving Mrs. Herzog a fictitious name and informing her that the owners of the grips were in Chicago, he would leave no trail whereby the grips could be traced either to himself or to Miller and Callahan. Other statements were testified to by officer O'Brien which, if true, tended to prove that the defendant was trying to secrete the property in precisely the same way as a thief would have done if he had stolen the jewelry or received it knowing that it was stolen. The defendant tried to explain his conduct and statements consistent with an innocent purpose, but the jury did not believe him. There was an abundance of evidence upon which to base instruction numbered 5.

Defendant also insists that instruction numbered 5 forced him to take the stand and deny the incriminating admissions proven against him by the State, citing the cases of State v. Hudspeth, 150 Mo. 12; and State v. Hollingsworth, 156 Mo. 178.

The instructions given in the two cases last cited were quite different from the instructions now under consideration. The instructions in those cases told the jury that when statements made by a defendant were proven by the State *and not denied* "they are taken as true."

A statement made by a defendant against his interest may be negatived in many ways without requiring him to be sworn. The evidence of the State's witnesses might be negatived by other witnesses who were present when the admissions or incriminating statements were alleged to have been made by defendant; by showing that defendant was not present at the time and place where it is claimed he made the statements attributed to him; or by impeachment of the State's witnesses for want of reputation, or for lack of memory, etc.

IV. Instruction numbered 5 appears on its face to be a comment upon that part of the evidence regarding the statements or admissions made by the defendant before the trial, and, therefore, appears to violate section 5244, Revised Statutes 1909, which prohibits trial courts from commenting upon evidence, unless requested so to do by the prosecuting attorney and defendant.

**Instructions: Comment on Evidence.**

Section 5244 has been in our statutes since March 21, 1835, and during all of that time it has been regarded as an obnoxious practice for trial courts to single out some part of the evidence and tell the jury what weight should be given it. [State v. Dunn, 18 Mo. l. c. 424; State v. Hundley, 46 Mo. 414; State v. Sivils, 105 Mo. 533-4; State v. Smith, 53 Mo. l. c. 271; and State v. Rogers, 253 Mo. 399.]

On the other hand, it has been held by this court since 1850 that, when a defendant has, after the commission of a crime and before trial, made statements tending to show his guilty connection with such crime, and his statements are proven by the State, the jury may believe what he has said against himself and reject whatever he may have said tending to show his innocence. [Green v. State, 13 Mo. 392; State v. Wisdom, 119 Mo. 539; State v. Howell, 117 Mo. 307, l. c. 323; and State v. Merkel, 189 Mo. l. c. 321.] While the instructions in these cases are undoubtedly comments upon certain parts of the evidence, they do not constitute reversible error, for the reason that while courts are prohibited generally from selecting certain parts of evidence and telling the jury how they shall weigh same, there are certain classes of evidence which, by law, are presumed to prove certain things; and as to those particular classes of evidence it is not improper for the court to tell the jury what facts they prove, or tend to prove.

By section 5231, Revised Statutes 1909, courts are required to instruct on the legal inference or presumption to be drawn from evidence of good character on the part of a defendant. This is nothing less than a direct comment on the evidence which defendant may have introduced touching his good character. Thus we find one section of our statutes prohibiting comment by the courts, and another section commanding the court to comment upon a certain class of evidence.

By section 4585, Revised Statutes 1909, proof that a bank failed is made prima-facie evidence that the officers of such bank had knowledge that it was insolvent when they assented to the receipt of deposits by such bank. In such a case it is proper for the court to tell the jury that the failure of the bank makes out a prima-facie case of knowledge of its insolvency on the part of its officers, notwithstanding such an instruction is a direct comment on the evidence of the failure and greatly increases the force of such evidence. [State v. Sattley, 131 Mo. 464; and State v. Darrah, 152 Mo. 522.]

When a defendant testifies in his own behalf and the State proves that he has been convicted of some other crime, he is entitled to an instruction telling the jury that the evidence of his former conviction can only be considered by them as tending to discredit his testimony as a witness, and shall not be regarded as evidence of his guilt of the crime for which he is then on trial. [State v. Phillips, 233 Mo. 299; and State v. Jones, 249 Mo. 80.]

From what has been said we deduce the true rule to be that when evidence is introduced which, under either the statutes or common law as it now exists in Missouri, is entitled to less or more weight than ordinary evidence, it is not error for the court to instruct the jury how such evidence must be weighed. Such instructions are the comment of the law, or the

rule which the law has prescribed for determining the effect of such special classes of evidence, and form exceptions to the general rule that courts shall not in their instructions single out and comment upon evidence.

V.  Under the oft-repeated rulings of this court there was no error in giving instruction numbered 5; but, speaking for myself, I think said instruction was useless, and, for that reason, should not have been given.  It would be a very ignorant jury, indeed, which would not know that, if the defendant made a statement pointing directly to his guilt, such statement was the highest kind of evidence that what he said was true.  Besides the uselessness of this instruction, I think there is some probability that witnesses may not remember, or fail to correctly repeat oral statements; and for those reasons evidence of oral admissions should not be emphasized by a special instruction calling attention to them.  The weight and correctness of such evidence can safely be left entirely with the triers of fact.

*Instruction Unnecessary.*

VI.  A further assignment is that the court erred in failing to grant the defendant a continuance when his first lawyer withdrew from the case.  There is no evidence before us of the withdrawal of any attorney, except the bare allegation of that fact in the motion for new trial, and it is not necessary to quote authorities to sustain the proposition that motions for new trial do not prove themselves.

*Refusal of Continuance.*

Finding no reversible error the judgment of the trial court is affirmed.  *Walker, J.,* concurs; *Faris, J.,* concurs in result and in all of the opinion except paragraph five to which he dissents.