## THE STATE v. FRED WANSONG, Appellant.

### Division Two, May 29, 1917.

1. **FELONIOUS ASSAULT: Use of Deadly Weapon: Presumption of Intent.** In the prosecution of a defendant for an assault with intent to kill, it is not error to instruct that an intent to kill arises from an intentional striking upon a vital part with a deadly weapon. The rule is exactly the same in such a case as it is in murder cases. As a matter of law a presumption of murderous intent should be indulged from the fact that defendant or his co-conspirator struck the prosecuting witness upon the front and back of the head with a four-foot stick of oak cordwood and crushed his skull.

2. **CIRCUMSTANTIAL EVIDENCE: Failure to Instruct.** If the defendant neither in his motion for a new trial nor in his exceptions to the instructions as given mentioned the failure of the court to instruct on circumstantial evidence, his complaint on appeal that the court failed to so instruct will not be considered.

3. **CONFESSION: Instruction: Comment Upon Evidence.** An instruction telling the jury that what defendant in a written confession said against himself the law presumes to be true because said against himself, what he said for himself you are not bound to believe, but may believe or disbelieve as it is shown to be true or false by the evidence in the case, is not erroneous as a comment on the evidence.

4. **INTENTION TO ASSAULT: Mistaken Identity of Person Assaulted.** Where defendant lay in wait with the intention to assault the driver of a milk wagon, whom he thought to be Peterson, but who turned out to be Willy, and whom he did assault, it cannot be held that he did not intend to assault Willy. There was no mistake as to intent; it was only a mistake as to the identity of the intended victim.

Appeal from St. Louis City Circuit Court.—*Hon. Rhodes E. Cave,* Judge.

AFFIRMED.

*Campbell Cummings* for appellant.

(1) The entire evidence was insufficient to support the verdict of guilty of the felony charged, assault with

intent to kill, and the judgment should be reversed and appellant ordered discharged. When two or more per- sons conspire to fight another with their fists and one resorts to the use of a deadly or dangerous weapon with- out the other's knowledge or consent, the other cannot be held responsible. State v. May, 142 Mo. 153; Kelley's Crim. Law (3 Ed.), sec. 49, p. 49; 8 R. C. L., p. 226, sec. 222. (2) A person is not guilty of an assault by reason of the mere fact that he is even present when it is com- mitted, or that he does not take steps to prevent it, or that he has knowledge of it, or that he approves it; but he must have done some act by way of aid or encourage- ment. There was no evidence that appellant was present at the time of the felonious assault or that he was ready to aid, if necessary. There was no evidence that appel- lant was at any time acting in pursuance to a conspiracy to commit the felonious assault, but it could only be claimed as tending to prove an assault and battery. 5 Corpus Juris, p. 758, sec. 260; State v. Melvin, 166 Mo. 573; State v. Valle, 164 Mo. 551; Willi v. Lucas, 110 Mo. 222. (3) There is no question of abandonment of the felony in the case, inasmuch as there is no evidence that appellant ever entered into an agreement or understand- ing to commit a felonious assault. When he learned there was contemplated a felonious assault, instead of an assault and battery, he went no further; he withdrew before it took place. Authorities supra; Kelley's Crim. Law (3 Ed.), sec. 49, p. 49; 2 R. C. L., p. 533, sec. 9 and p. 545, sec. 25. (4) If there can be claimed to be any evi- dence that appellant committed the felony or that he advised or aided in its commission, such evidence would be entirely circumstantial, and yet no instruction on cir- cumstantial evidence was given. Such an instruction could not be on a collateral issue and it was error in the trial court not to have given it on its own motion. State v. Conway, 241 Mo. 282; State v. Valle, 164 Mo. 551; State v. Gooch, 105 Mo. 392; Willi v. Lucas, 110 Mo. 222; 2 R. C. L., p. 527, sec. 4; 10 R. C. L., p. 1007, sec. 196. (5) The court erred in giving the instruction on the confession. State v. Shellman, 192 S. W. 435; State v.

Finkelstein, 191 S. W. 1002; State v. Creeley, 254 Mo. 382.; State v. Barrington, 198 Mo. 125 (1. c.); Stetzler v. St. Ry. Co., 210 Mo. 704; Zander v. Transit Co., 206 Mo. 461; Clay v. State, 15 Wyoming 64; Welsh v. State, 96 Ala. 92; McLemore v. State, 164 S. W. 119; 17 Cyc. 806; Worley v. Dryden, 57 Mo. 233. (6) The defendant should have been prosecuted under Sec. 4483, R. S. 1909, and not under Sec. 4481, R. S. 1909, for the evidence discloses that if an assault with intent to kill was intended the assault was contemplated upon one Peterson, and not upon the person charged in the information to have been assaulted. Kelley's Crim. Law & Prac., (3 Ed.), sec. 6; State v. Mulhall, 199 Mo. 202; State v. Williamson, 203 Mo. 591; Lacefield v. State, 34 Ark. 280; Horton v. People, 47 Col. 252; Johnson v. State, 53 Fla. 45.

*John T. Barker,* Attorney-General, and *Lee B. Ewing,* Assistant Attorney-General, for the State; *James Billings* of counsel.

The instruction on involuntary confession and voluntary statements is correct and proper. Conley v. State, 12 Mo. 462; State v. Howell, 117 Mo. 307. The defendant complains in his motion for new trial that the court failed to instruct upon all questions arising in the case. This complaint presents no question for review. The issues under the evidence are properly presented by the instructions. The defendant is obliged to point out in his motion for new trial the facts or theory upon which the court failed to instruct. State v. Laycock, 141 Mo. 274; State v. Paxton, 126 Mo. 500.

FARIS, J.—Defendant was convicted in the circuit court of the city of St. Louis for assault with intent to kill one Herman Willy. His punishment was fixed by the jury at imprisonment in the penitentiary for a term of two years. From the resulting sentence he has appealed.

Defendant and one George Hunck (tried jointly with defendant and convicted, and likewise given two years in the penitentiary, but who died, as the brief herein avers, pending this appeal), were employed as drivers for the

Jersey Farm Dairy Company until a milk-drivers' strike was called, whereupon they quit and joined the strikers. Herman Willy, the prosecuting witness, is a baker by trade, but at the time of the assault he was employed as helper by the above named company and temporarily engaged in delivering milk. While making a delivery of milk at the bakery of one Simon on Sidney Street in the city of St. Louis, about 3:30 or 4 o'clock on the morning of the 16th of February, 1915, he was struck with a heavy stick of oak cordwood on both the front and back of his head and most dangerously and seriously hurt and wounded.

The evidence produced on the part of the State tends to show that defendant, in company with said Hunck and an unknown man (likewise a striker, and who is referred to in the record simply by the name of "Jack"), went to the bakery of said Simon about two o'clock on the morning of the assault. Hunck went inside and engaged Simon in conversation; defendant and Jack remained outside of the shop in a dark hallway or alley. Hunck, who was well known to Simon, endeavored to persuade the latter to quit buying milk from the Jersey Farm Dairy Company. Simon refused, and he was then told by Hunck that they had come there for the purpose of lying in wait for the driver of the milk wagon, whom they believed to be one Peterson, and "beat him up." Simon protested that he did not want the "job pulled off" in his place, but Hunck assured Simon that the latter would see nothing and hear nothing—thus by inference complimenting the artistical touch with which the purposed assault would be performed. After talking with Simon for some time, one of the two men who were waiting outside (and who Simon first says was defendant, but is afterward doubtful on this point) came to the door and called to Hunck to hurry up, that they were freezing to death outside. Hunck then took a drink of whiskey with Simon and a helper of the latter, and joined the men outside in the dark hallway. Later, and only some fifteen minutes before the assault took place, defendant again came to the door and asked Simon if he had any pies; upon receiv-

ing an affirmative reply, defendant bought and paid for two pies; one of which he ate and the other he gave to Jack.

Defendant is positively identified by Simon as the man who purchased the pies. Moreover, defendant admits this in a confession which some four or five police officers say he made. Shortly after this, and as stated only some fifteen minutes thereafter, Simon heard the milk wagon coming and heard it stop. Immediately thereafter he heard the cries of the prosecuting witness Willy out in the hallway. He hurried out to him and found him leaning against the wall in a dazed condition and bleeding about the head, and observed a large stick of oak cordwood, about four feet long, lying in the hallway near him. None of his assailants was visible at this time. Willy was taken to the hospital, where he lay unconscious for some seventy hours, suffering from a very serious fracture of the skull, from which he was weeks in recovering sufficiently to permit his leaving the hospital. In fact, at the time of the trial he had not then fully recovered, and the record makes it a serious question whether he is not horribly and permanently injured.

Defendant and said Hunck (the latter having in the meantime gotten into some fresh trouble) were arrested in the afternoon. Each made a statement as to his participation in the events above set out as occurring at the bakery, which statements corroborate largely the testimony of the State's witnesses. Defendant confessed that it was agreed that said Hunck, Jack and himself should go to the bakery and lie in wait for the driver of the milk wagon, whom they believed to be one Peterson, and "get him;" that Hunck had told him that he knew of a quiet place about Sidney Street where they could get Peterson. Upon arriving at the rendezvous Hunck went inside and had the conversation, which we have referred to, with the baker Simon, while defendant and Jack remained outside in the dark hallway. Defendant says in his confession, in describing the preparation for the assault on Willy, that "Jack first went and got a rock," but later discarded that as not being

sufficiently lethal for his needs, and went and got a four-foot stick of oak cordwood and asked defendant to "lift that." Whereupon defendant lifted it and asked Jack what he was going to do with that and if he intended to kill the fellow; that Jack replied that he "didn't care whether he did or not." Defendant further says in his confession that he then bought the pies which he and Jack ate, and that after waiting with the latter until nearly four o'clock, he heard the milk wagon coming and ran away before the driver was assaulted. Defendant, it will be noted, does not admit that he was present at the time of the assault, or that he knew anything about what took place after he ran, just as the wagon was driving up. He says, however, that he left Jack behind. He admits that Hunck, Jack and he went to the bakery for the purpose of lying in wait for and getting" the driver and "beating him up."

The evidence upon the part of the appellant tends to show that he and Hunck went to the bakery merely for the purpose of affording Hunck an opportunity to see Peterson and try to get him off the wagon and to see Simon and endeavor to prevail upon the latter to quit taking milk from the Jersey Farm Dairy Company. He denies in his testimony, in effect, all that he had said in his confession, and swears that neither Hunck nor he had arranged for any assault to be made upon anyone, but that Jack and two or three others remained at the Simon bakery after he and Hunck had left. Defendant admits the purchase of the pies from Simon and in this corroborates Simon upon the question of defendant's identity as one of the persons waiting in the hallway. He reiterates in his sworn testimony the statement of his confession that he left the bakery before the milk wagon arrived, and swears in contradiction of his confession that he left the bakery a long time before the milk wagon came.

Both defendant and Hunck testifying in the case, say that they were beaten by the police and compelled by physical mistreatment to sign the confessions offered in evidence. Defendant says he was badly beaten and

bruised by the police before he signed the confession, and upon this point offers some little corroborating testimony from two or three of his co-strikers as to the condition of his face and the marks upon it. Upon this point, both as to the condition of his face and as to the question of physical force being used to compel him to make a confession, he is overwhelmingly contradicted by some five or more police officers.

The points upon which defendant relies for a reversal will be found in our discussion, and such further testimony and statement of facts as shall serve to make these contentions and our discussion clear, will be found set forth therein.

I. Defendant complains that so much of the following instruction, given upon the trial over his objections, as we copy below, is erroneous, to-wit:

"You are further instructed if you find from the evidence that the defendants, acting jointly with a common intent or either one acting alone, did assault and wound the said Herman Willy with a deadly weapon, to-wit, a weapon which as used was likely to produce death in a vital part of of the body of the said Herman Willy, without just cause or provocation, then, unless the facts and circumstances in evidence satisfy you to the contrary, the law will presume and you should so find that the assault was made with malice aforethought and with intent to kill, by the defendants so acting jointly with a common intent, or by either one so acting alone. Whether the piece of wood as used was a deadly weapon, and whether such weapon was used in such a manner and with such intent by the defendants, or either of them, on the occasion under consideration, are matters to be determined by you from all the facts and circumstances in the case."

*Presumption of Intent to Kill.*

The burden of defendant's contention and his chief complaint is that no presumption of intent is by law allowable, or is justly to be drawn from the use by defendant of a deadly weapon upon a vital part of the body

of him who is assaulted. This court has repeatedly held against this contention of defendant. [State v. Schloss, 93 Mo. 361; State v. Hall, 85 Mo. 669; State v. Davis, 226 Mo. 493; State v. Silva, 130 Mo. 440; State v. Patterson, 116 Mo. 505; State v. Holme, 54 Mo. 153; State v. Underwood, 57 Mo. 40; State v. Ruck, 194 Mo. 1. c. 431; State v. Foster, 61 Mo. 549; State v. Alexander, 66 Mo. 148; State v. Walker, 98 Mo. 95; State v. Doyle, 107 Mo. 36; State v. Fairlamb, 121 Mo. 137; State v. Grant, 144 Mo. 56; State v. John, 172 Mo. 220; State v. Webb, 266 Mo. 672; State v. Keener, 225 Mo. 1. c. 496.]

While it is probable that some of the above cases wherein an instruction similar to the one here attacked was given, were murder cases, in what does the distinction lie? An intent to kill is a necessary element of murder and to constitute murder an intent to kill must be proved directly, or be presumed from the facts of the case; likewise and to the same degree precisely in a case of assault with intent to kill, must the intent to kill be proved or be presumed from the facts. In short, there is no distinction to be drawn touching the element of intent in the two cases. It is the identical element in each, and identically the same presumption is to be drawn whenever a deadly weapon is intentionally used upon a vital spot of the body by another. Of course, if there is countervailing proof raising an issuable fact as to the intent, e. g., that the act was accidental or that it was in self-defense and only the necessary modicum of force was used or intended, or other fact negativing intent, then such issuable fact ought to be submitted to the jury, and no presumption should be entertained about the matter, for in such case there is not room for presumptions. Likewise would this be the rule if the cases were murder. [State v. Swearengin, 269 Mo. 177.] If however, in the instant case (as well as in all other cases, similar as to their facts), no presumption of intent arises as a matter of law from the facts of an intentional striking in a vital spot with a deadly weapon, then we must instantly and inevitably allow defendant to go acquit. For unless we are allowed as a matter of law to indulge a presumption

of murderous intent from the fact that defendant (or his co-indictee, whom he was aiding and abetting) struck the prosecuting witness upon the front and back of the head with a four-foot stick of oak cordwood, "which as used [that is, used in a manner which crushed his skull and rendered him senseless for 70 hours] was likely to produce death," then there is wholly absent all proof of felonious intent in this case and the conviction for a felony cannot stand. Cases may be found wherein such an instruction would be error; but all such we opine, will be found to fall into the category of cases wherein there was countervailing proof of facts which negatived the alleged intent to kill and wherein upon such countervailing proof an issuable question arose *which itself called for an instruction.* No such issues arose upon the trial of the instant case, so we have no hesitation in disallowing the contention of the defendant.

II. Defendant complains that the court erred in failing to instruct on circumstantial evidence. If this was error under the facts here, no proper preservation of it was made in the record, for the reason that defendant neither in his motion for a new trial nor in his exceptions to the instructions as given mentions any failure to instruct on circumstantial evidence. [State v. Sykes, 248 Mo. l. c. 712; State v. Sydnor and Foster, 253 Mo. 375; State v. Douglas, 258 Mo. 281; State v. Pfeifer, 267 Mo. 23.] He did not except to the failure of the court to instruct on all of the law of the case, or to fully instruct the jury, but contented himself with excepting to the specific instructions as given. That is not sufficient. [State v. Gifford, 186 S. W. l. c. 1060; State v. Douglas, supra.] In the case of State v. Gifford, supra, we took occasion to say:

"But we are precluded from examining this point in this case for the reason that defendant's sole assignment of error in his motion for a new trial upon the point now urged is thus stated:

*Failure to Instruct.*

" 'The court erred . . . in not declaring all the law in this case necessary for the information of the jury in arriving at their verdict.'

"This is not a sufficiently specific assignment of an error urged here as being bottomed upon the giving by the court nisi of an erroneous instruction, or for the failure of the court to give any requisite instruction. [State v. Taylor, 267 Mo. l. c. 48; State v. Levy, 262 Mo. l. c. 190; State v. Sykes, 248 Mo. l. c. 712; State v. Dockery, 243 Mo. 592; State v. Wellman, 253 Mo. l. c. 316; State v. Chissell, 245 Mo. l. c. 554; State v. Horton, 247 Mo. l. c. 663.] The trial court is to be allowed the last clear chance to correct its own errors, and thereby, perhaps, save the delay and expense of an appeal.

"The above cases and many others which we might cite but follow the analogous statutory rule in civil cases, which requires motions to be specific (Sec. 1841, R. S. 1909), and they accentuate the idea that at some stage of the trial of a criminal case the defendant is saddled with the duty of taking the trial court measurably into his confidence."

It may well be that upon the facts shown in evidence defendant was not as a matter of right entitled to an instruction on circumstantial evidence. We are urged to so declare. But since this is a close question, and since we dispose of the contention upon other grounds, we need not and do not pass on this mooted question. For the reason set out we disallow this contention.

III. Upon the weight to be given to the alleged confession of defendant and said George Hunck, who was tried with him, the learned trial court instructed the jury thus:

"You are further instructed that if you find from the evidence in this case that after the defendants, or either of them, had been arrested and accused of committing the offense for which they are now on Confession. trial, and while they, or either of them, were in the custody of the officers of the law who placed them under arrest, either of them made any statement to such

officers, either orally or in writing, regarding the commission of said offense, and if you further find that such statement was procured from him by coercion, threats or through fear, and that but for such coercion, threats or fear such defendant would not have made such statements, then you are instructed to disregard such statements as evidence in the case.

"Before any confession or statement can be received as evidence in a criminal case, it must be voluntarily made by the accused, and if not so made then such confession or statement should be rejected by the jury, and not considered in passing upon his guilt or innocence.

"If, however, you find and believe from the evidence that the defendants, or either of them, made any voluntary statement or statements, in relation to the offense charged in the information, after such offense is alleged to have been committed, the jury must consider all that each one said together and what one of them said, if anything, cannot be used against the other unless assented to or acquiesced in by the other; and while each one of said defendants is entitled to what he may have said for himself, if true, the State is entitled to anything he said against himself in any conversation proven to your satisfaction by the State. What each defendant said against himself, if anything, the law presumes to be true because said against himself. What he said for himself you are not bound to believe, because said in a statement or statements proved by the State, but you may believe it or disbelieve it, as it is shown to be true or false by the evidence in the case. It is for you to consider, under all the circumstances, from the evidence, how much of the whole statement or statements of the defendants proved by the State is worthy of belief."

Against the last paragraph of the above instruction defendant's learned counsel argues ably and forcibly, for that it is a comment upon the evidence. This contention has been made repeatedly here. Nevertheless we have never in a criminal case held it to be error. We have occasionally, in cases wherein the admissions said to have been made were oral, severely criticised the giving of it,

but contented ourselves with the criticism. In no case which we have found, or to which our attention has been called, have we held the giving of it reversible error. [State v. Creeley, 254 Mo. 382; State v. Powers, 255 Mo. 263.]

Learned counsel for defendant speak of it as an admission against interest. It is that and more; it is a confession. Here absent the discussed infirmity arising from the witnesses' likelihood to forget, or inaccurately relate, what was said in State v. Creeley, supra, does not apply, for what the defendant said—if he said anything, and that the jury are to find—was written down at the time and in his presence and signed by him. The case of State v. Finkelstein, 269 Mo. 612, is called to our attention as being an authority which by overwhelming analogy states a rule which should control this aspect of the instant case. The above case has already been urged upon us as a panacea for a multitude of legal evils. If the Finkelstein case could further speak it might well paraphrase the sarcastic lines of Shakespeare and say: The law is out of joint; oh cursed spite, that ever I was born to set it right. Unless we are now to overrule all the rest of the criminal law, we are not disposed to allow this contention.

IV. It is urged that inasmuch as defendant believed that one Peterson was the driver of the milk wagon; that he did not know the man Willy who was actually struck; that he never saw him, as defendant swears, till he saw him in the court room at the time of the trial, and that he did not intend to assault Willy, but was lying in wait for and intended to assault Peterson, he cannot be convicted for an assault with intent to kill Willy, touching whom he had no felonious intent whatever.

**Intended Assault Upon Another.**

Unfortunately the facts will not permit the deductions above drawn by defendant. The facts show he did intend to assault the identical person who was assaulted; he merely believed him to be Peterson. It was not a mistake as to the intent; it was merely a mistake as to iden-

tity of him as to whom the intent was harbored. He intended (the jury so found, and therefore in the argument we may so assume) to strike the identical person he did strike, believing him to be some other person. The statement of the contention in juxtaposition with the true facts, shows without the necessity of citing authority or further discussion, the error of it. It would be a dangerous doctrine to write into the law, if we were to hold that A should go acquit, if lying in wait to rob X, who is a bank cashier, in the act by mistake, believing Z, an inmate of the poor house, to be X, he shoots and wounds or kills the latter. The bald statement of the contention condemns it.

V. The point is urged that there is no substantial evidence upon which to sustain the conviction of the defendant. Upon this point it is enough to say that we have set forth in our statement of the facts a brief resume of the proof offered by the State in the case. We will not cumber the books with a reiteration of it. Suffice it to say that in our view it fully justified the verdict rendered. Indeed, we may say in disallowing this contention, that the proof of guilt offered was far stronger than that we have lately been called on to weigh upon this precise contention, in several cases wherein we held the evidence sufficient. [State v. Taylor, 261 Mo. 210; State v. Concelia, 250 Mo. 411.]

*Sufficiency of Proof.*

Other points made in the brief have been examined, but we find no merit in them. Let the case be affirmed. All concur.