THE STATE v. ALFRED SELVAGGI, Appellant.—2 S. W. (2d) 765.

Division Two, February 18, 1928.

*Verne Lacy* and *J. O. Linder* for appellant.

*North T. Gentry*, Attorney-General, and *A. B. Lovan*, Assistant Attorney-General, for respondent.

HENWOOD, C.—The appellant was tried and convicted in the Circuit Court of the City of St. Louis on a charge of robbery in the first degree, and the jury fixed his punishment at imprisonment in the penitentiary for eleven years. The case is here on his appeal from the judgment and sentence entered on the verdict.

The prosecuting witness, Thomas Grant, testified that on September 8, 1926, he was conducting a restaurant at 5715 Delmar in the city of St. Louis. About 12:15 A. M. in the morning of that day, while Grant was engaged in waiting on two young men, appellant entered the front door and stopped at the cigar case in the front part of the restaurant. When Grant went around behind the cigar case to wait on him, appellant displayed an automatic revolver and said: "Come on. Give me your money. Give me your money." Grant replied: "I ain't got no money." Appellant reached over the counter, opened the cash register and "got the money." He then said to Grant: "Come on. Give me yours." Grant said: "Help yourself." Appellant said: "Come on. Come on." Grant handed appellant forty cents from his pocket and said: "Oh, Lord, you wouldn't take all the money a poor man has got." Appellant laid the forty cents down on the cigar case, and, as he started to leave the restaurant, said to Grant: "You walk straight up this way and don't you look back." An examination of the cash register disclosed that the robber had taken therefrom four one-dollar bills, one of which had one corner torn off. Grant first told the two customers of the robbery and reported the same to the police station by telephone. The two customers mentioned were the only other persons in the restaurant at the time. They told Grant they did not see the robbery, but offered their assistance in catching the robber. Grant said they were seated at the fourth table, about thirty feet from the cigar case; that they were busy eating and talking while the robbery took place, and that

they were somewhat intoxicated. Grant further said that the restaurant was well lighted with arc lights and that the robber wore no mask and was not otherwise disguised. About forty-five minutes after the robbery occurred, Grant was called to the police station and was shown two men, appellant and one Marvin Michaels, in the same room at the same time. He identified appellant at once as the man who robbed him and also identified the one-dollar bill with one corner torn off. Again at the trial, he identified appellant as the man who committed the robbery, and the one-dollar bill with one corner torn off.

It appears from the testimony of two police officers that, about fifteen minutes after the robbery (12:30 A. M.), they arrested appellant and Marvin Michaels in a stolen automobile, when they were discovered driving east on Enright Avenue, about 50 or 100 feet east of the intersection of Enright and Goodfellow and about one block and a half from Grant's restaurant. Both appellant and Michaels were in the front seat of the car and appellant was driving. An automatic revolver was found back of Michaels in the front seat of the car, with eight loaded cartridges in the magazine. Michaels had four one-dollar bills in his pocket and one of the bills had one corner torn off. Nothing was found on appellant except "a little change." At the time of his arrest, appellant gave his address as 311 South Third Street. The officers further testified that Grant identified appellant as the man who "held him up," immediately upon seeing him at the police station, without any previous discussion with them or any suggestions from them.

Appellant, testifying in his own behalf, said he was eighteen years of age and that, at the time of the robbery, he resided at 5659 Vernon and was employed as a chauffeur for Alex Countie in the coal and hauling business. He disclaimed any knowledge of the robbery and any participation in the same, and said he knew nothing about the automatic revolver found in the stolen automobile. He further said that, in the early part of the evening in question, he was at Loew's State Theatre; that he left the theatre "around eleven o'clock" and went "to Thompson's to get something to eat at 7th and Washington;" that later he took the bus on Washington Avenue and, when he got off the bus at Goodfellow and Delmar, about 12:20 A. M., and started to walk to his home, four blocks north, Michaels came along in the Hudson touring car and invited him to ride; that Michaels asked him to drive because it was raining and Michaels said he couldn't drive very well on a rainy night; that he had known Michaels eight or nine years and had attended school with him. And he further said that, when he was taken before Grant at the police station for the purpose of identification, one of the officers said to Grant: "This is the man, isn't it?" And Grant said: "Yes."

On cross-examination, he admitted that he gave the officers his address as 311 South Third Street because he did not want his correct address "in the paper;" and he also admitted that Michaels told him the automobile "was a stolen car." He said that he did not meet any person he knew, either at Loew's Theatre or at Thompson's restaurant, and that he did not remember the picture he saw at the theatre or any of the "actors" in the picture. On re-direct examination, he said he had been in Grant's restaurant "about three or four times" before the night of the robbery.

Marvin Michaels, testified, on behalf of appellant, that he was the man who robbed Grant and took the four one-dollar bills from the cash register in the restaurant and that, when he saw the officers, he took his automatic revolver from his pocket and put it behind the cushion in the automobile; that appellant had no part in the robbery and knew nothing about it; that he saw appellant get off of the bus and asked him to ride and also asked him to drive the car. On cross-examination, he admitted that, when arrested, he gave his name as "James Dixon" and his address as "Spruce Street," though his correct address was 4333 Delmar Boulevard. He said he got the automobile, about an hour before the robbery, "from a friend," whose name he refused to disclose, and admitted that, following his arrest, he learned the car belonged to Mr. Jolly and that Mr. Jolly was with the officers when he and appellant were arrested in the car. He also admitted that he had been previously convicted on a charge of robbery and that he had "escaped from Boonville, Missouri," two days before this robbery occurred. And it was developed, on the cross-examination of this witness, that he was of Irish descent, with blue eyes and blonde complexion, and that appellant is an Italian, with a dark complexion and "coal black hair."

Alex Countie and Charles Emig, both former employers of appellant, testified to his previous good reputation for truth and veracity and honesty.

I. The sole question for our consideration is the sufficiency of the evidence. It appears from the testimony of Michaels that he and appellant are conspiciously dissimilar in general personal appearance. Grant had a good opportunity to observe the unmasked robber in a well-lighted room. Thirty minutes later he positively identified appellant as the man who robbed him, without suggestion from any source, when both appellant and Michaels were before him. He positively identified appellant again at the trial, when both appellant and Michaels were present. Appellant was arrested a few minutes after the robbery in a stolen automobile and within a block and a half of Grant's restaurant. He could have easily handed the four one-dollar bills to Michaels, even

after they were stopped by the officers. An automatic revolver was found in the car. By his own account of his whereabouts, shortly before his arrest, appellant placed himself very close to the robbery, both in time and distance. Appellant's explanation of the incriminating circumstances against him and Michaels' bold statement on the witness stand that he committed this robbery alone and unassisted merely presented a question for the jury to decide. And, in our opinion, the evidence is amply sufficient to support the finding of the jury as to appellant's guilt. [State v. Wilhite, 295 S. W. 82.] It is the peculiar province of the jury to weigh the evidence and pass on the credibility of the witnesses, and, where, as in this case, their verdict is supported by substantial evidence, this court will not interfere.

II. The assignments of error relating to the admission and exclusion of evidence and the instructions given to the jury are general in character and do not specify with any degree of particularity the matters complained of. Such assignments do not comply with the present rule in criminal cases and, for that reason, will not be considered. [New Sec. 4079, Laws 1925, p. 198; State v. Standifer, 289 S. W. 856; State v. Murrell, 289 S. W. 859.]

III. The motion for a new trial further asserts that the jury was influenced by improper remarks and other improper conduct of the prosecutor; that the jury rendered a compromise verdict; and that, after his trial, appellant discovered new evidence, which is available on his side of the case. We find nothing in the record to support any of these alleged grounds for a new trial. They will, therefore, be disregarded. [State v. Baird, 297 Mo. 219, 248 S. W. 596; State v. Creeley, 254 Mo. 382, 162 S. W. 737.]

IV. Learned counsel who appear for appellant here did not represent him in the trial court. They argue with great earnestness that this judgment of conviction should be reversed and this cause remanded for another trial because appellant was defended by an incompetent lawyer at the trial now under review. In support of this argument, counsel cite one case, State v. Jones, 12 Mo. App. 93. It should suffice to say that this case was *expressly overruled* in the case of State v. Dreher, 137 Mo. 11, 38 S. W. 567, in which this court said: "In that case no authority was found upon which to base the ruling and we cannot find that it has ever been followed in this or any other State . . . ; but we

think that the Court of Appeals in that case suffered a hard case to make bad law and ignored the fact that it was a court for the review of errors only, and that it was confined to such errors as appeared on the record proper and to such exceptions as had been ruled on by the trial court.'' But, aside from this well-established rule of practice and procedure, this argument is not persuasive, on the record before us. While the defense in this case might have been more artfully presented by a more skillful lawyer, the record does not disclose that appellant was deprived of any of his substantial rights.

The information is sufficient and the verdict is in approved form. No prejudicial error appearing, the judgment is affirmed. *Higbee* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.