STATE of Missouri, Respondent,

v.

Bill WORLEY, Appellant.

No. 49820.

Supreme Court of Missouri,

Division No. 1.

Oct. 14, 1963.

No attorney for appellant.

Thomas F. Eagleton, Atty. Gen., Julian L. O'Malley, Asst. Atty. Gen., Jefferson City, for respondent.

HOLMAN, Judge.

This proceeding was instituted by the defendant, a prisoner in the Missouri State Penitentiary, under the provisions of Supreme Court Rule 27.26, V.A.M.R., by the filing of a motion to set aside a judgment and sentence wherein he had been adjudged

guilty of burglary in the second degree and stealing. The court in the original trial had found, as charged, that defendant had been previously convicted of a felony. Defendant's punishment was fixed by the court at ten years' imprisonment on the charge of burglary and five years for the crime of stealing, the sentences to run concurrently. Upon appeal to this court the judgment was affirmed. State v. Worley, Mo.Sup., 353 S. W.2d 589.

The trial court overruled the motion to vacate, without granting a hearing thereon, upon a finding that the record disclosed that the defendant was not entitled to any relief. Defendant has duly appealed from that order and judgment.

A number of assignments in defendant's pro se motion contend that the court erred in the admission of various items of evidence during the trial. Assignments of that nature may not be considered in a proceeding under Rule 27.26. We have said that " 'Rule 27.26 affords a prisoner a convenient means for a direct attack on the judgment of conviction by motion in the original proceeding. The attack is governed by the general principles applicable to habeas corpus proceedings within the grounds specified in Rule 27.26, which lie only where the sentence is void or otherwise subject to collateral attack,' State v. Cerny, 365 Mo. 732, 286 S.W.2d 804, 806. We have also said that '[a] motion under Rule 27.-26 may not be used as a substitute for a motion for new trial (State v. Cerny, Mo. Sup., 286 S.W.2d 804) nor function as an appeal.' State v. Hagedorn, Mo.Sup., 305 S.W.2d 700, 702. * * * Rule 27.26 does not afford a basis for the review of trial errors * * *." State v. Childers, Mo. Sup., 328 S.W.2d 43, 44, 45.

Another assignment alleges that the motion should be sustained because defendant was held several days after his arrest without a warrant being issued, in violation of S. C. Rule 21.14, V.A.M.R. He does not complain of his treatment during that time and we note that no confession was offered at the trial. We see no connection between the alleged violation of Rule 21.14 and defendant's conviction. It is unnecessary for us to state what remedy was available to defendant because of the alleged violation of said rule. It is sufficient for the purposes of this appeal to rule that the alleged violation of Rule 21.14 would certainly constitute no basis in this proceeding for a collateral attack upon the judgment of conviction.

The remaining contention in the motion is that the judgment should be vacated because defendant was forced "to go to trial with a court-appointed counsel, who the court knew to be highly prejudiced toward the defendant; and the court knew that the defendant had secured services of his own attorney * * * [and] that the court-appointed counsel did not present any defense whatsoever, and there is a complete absence of any objection whatsoever in the case."

On May 10, 1961, the court appointed Honorable Thomas J. Layson, a well known and respected member of the Grundy County Bar, to represent defendant. The case was set for trial May 22, 1961, and on that date was reset for June 16. On June 16 it was reset for June 29, upon which date it was tried. The contention that his attorney was prejudiced against him apparently is the result of the fact that just before the beginning of the trial Mr. Layson, out of the presence of the jury, made the following statement to the court: "If the Court please, I want to make this record: I was appointed to defend Mr. Worley, the defendant. Here it is time to call the jury in. I have tried to confer with him. He's never been to my office. He's never been to see me. He was going to give me a list of his witnesses, and he's never done that. I don't know what his defense is. He's never confided in me. And less than five minutes ago he told me that he had his father to testify where the pinch bar came from, and that his co-defendant's uncle, who lives in Laredo, had given him the cigarettes. That's the first information I have had. I have had

no cooperation from him. And I am here to defend him and I will do the best job I can. But here's his parents, and I have never met them yet. And they have never—nobody has ever come to see me. I have written him; I have called him; I have talked to his co-defendant's mother, the person to whom I was supposed to make the calls; and I have had no assistance whatsoever. I have been totally ignored. I just want to make that record. I am going to defend him the best I can, Your Honor, but when this is over I don't want him to say that he's had no proper defense."

It is understandable that Mr. Layson would desire to explain to the judge (who had appointed him) the reason he had been unable to make a satisfactory preparation of the case before the trial. Defendant was at liberty on bond and apparently lived some distance from the place of trial, yet it appears that he did not go to Trenton to confer with Mr. Layson until a few minutes before trial time. We are of the opinion that under those circumstances defendant is in no position to complain of his attorney's failure to make advance trial preparation. Moreover, we note Mr. Layson's statement that he, nevertheless, would make the best defense he could. The court also advised the defendant that he would be given an opportunity to subpoena any witnesses he desired to present at the trial.

The only indication in the transcript that defendant may have employed an attorney appears in the following: "The Court: * * * The Court appointed Mr. Layson on May 10th to represent you in this matter. And you have had every opportunity since May 10th to confer with him, have you not? Bill Worley: I have been trying, but I haven't had time to do it. My lawyer is out of town. He won't be back until Monday. The Court: The Court is ready to proceed." That does not clearly indicate that the attorney had been employed to try the case. If he had been so employed the attorney undoubtedly would have communicated with the court and sought a resetting on a date when he could have been present.

We see no basis for the complaint that "the court knew that the defendant had secured services of his own attorney."

■ Defendant specifically complains of the failure of his attorney to file a motion to suppress certain exhibits (cigarettes, pinch bar) found by officers in defendant's car after his arrest, and his failure to object to the admission of certain evidence and exhibits which tended to connect defendant with the burglary of the Hathaway Grocery which occurred on the same night as the burglary with which defendant was charged. Expert testimony tended to show that the pinch bar found in defendant's car was used in both burglaries. We need not determine whether a motion to suppress would have been sustained or whether, on objection, the evidence concerning the burglary of the Hathaway Grocery would have been excluded. We observe, however, that the search of defendant's car was an incident to his lawful arrest (see State v. Redding, Mo.Sup., 357 S.W.2d 103), and that under certain circumstances evidence is admissible even though it tends to prove that defendant has committed another crime. See rule stated in State v. Gillespie, Mo.Sup., 336 S.W.2d 677 [10]. In this instance defendant's attorney evidently decided that, as a matter of strategy, it was best not to object to the exhibits which tended to connect defendant with the Hathaway burglary because, when they were offered, he expressly stated, "No objection."

■ For the purpose of disposing of defendant's contentions concerning the manner in which his attorney conducted his defense, we will assume (which we certainly do not find as a fact) that he may have adopted what later appeared to be unwise strategy in some respects. Such, however, would not be sufficient grounds for setting aside the conviction. This court "has consistently followed the rule that 'negligence or want of skill of counsel affords no ground for the reversal of even a criminal case [State v. Dreher, 137 Mo. 11, 23, 38 S.W. 567, 569; State v. Selvaggi, 319 Mo. 40, 45,

2 S.W.2d 765, 767].' State v. Mason, 339 Mo. 874, 98 S.W.2d 574, 577." State v. Childers, supra, 328 S.W.2d 45. In cases under the federal statute (28 U.S.C.A. § 2255), which is similar to Rule 27.26, the courts have adopted the rule that "Lack of effective assistance of counsel in the trial of a criminal case constitutes impingement upon a constitutional right of the accused and lays the judgment and sentence open to collateral attack by motion under the statute. But the constitutional right to the effective assistance of counsel does not vest in the accused the right to the services of an attorney who meets any specified aptitude test in point of professional skill. And common mistakes of judgment on the part of counsel, common mistakes of strategy, common mistakes of trial tactics, or common errors of policy in the course of a criminal case do not constitute grounds for collateral attack upon the judgment and sentence by motion under the statute. It is instances in which resulting from the substandard level of the services of the attorney the trial becomes mockery and farcical that the judgment is open to collateral attack on the ground that the accused was deprived of his constitutional right to effective assistance of counsel. Mitchell v. United States, 104 U.S. App.D.C. 57, 259 F.2d 787, certiorari denied, 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86; Black v. United States, 9 Cir., 269 F.2d 38, certiorari denied, 361 U.S. 938, 80 S.Ct. 379, 4 L.Ed.2d 357." Frand v. United States, 10 Cir., 301 F.2d 102, 103 (1962).

 Our examination of the trial transcript indicates that the defense was conducted in substantially the same manner as cases of that nature are ordinarily defended. Mr. Layson carefully cross-examined each of the eight witnesses offered by the State and made an argument to the jury in defendant's behalf. The record shows that after consultation with defendant and members of his family Mr. Layson advised the court (out of the hearing of the jury) that they had agreed that the best strategy was not to offer any evidence on behalf of defendant. After the verdict was returned

Mr. Layson timely filed a detailed motion for new trial. We certainly see nothing in the transcript to indicate that the manner of conducting the defense caused the trial to become a mockery or farce. Quite the contrary is shown.

For the reasons heretofore stated, we are in accord with the conclusion of the trial court that the record discloses that defendant is not entitled to the relief sought in his motion.

The judgment is affirmed.

All concur.