THE STATE v. WILLIAM POWERS, Appellant.

Division Two, February 17, 1914.

1. **RECEIVING STOLEN PROPERTY: Felonious Intent: Rule in this State.** At common law the burden rested upon the State to prove that a defendant charged with receiving stolen property received it with the felonious intention of depriving, or aiding in depriving, the true owner of his property. But there is no rule that prevents the General Assembly from restricting the operation of the common law, and that has been done by Sec. 4554, R. S. 1909, whereby a prima-facie case of feloniously receiving stolen goods is made out against a defendant by proof that he received the goods "knowing the same to have been stolen," and therefore proof of a felonious or unlawful intent is not necessary. But, if defendant received the stolen property with an intention of returning it to the true owner, that is a matter of defense, but in the absence of any evidence of such intention it is not error to omit from the instruction all reference to such intention.

2. ———: **Twenty Dollars From Each of Three Thieves: One Transaction.** Five thieves robbed a Gypsy of $8000 in gold coin, brought it to defendant's saloon, poured it out on the floor and made a division among themselves by each grabbing it up as fast as possible. There was evidence that defendant, when the stolen money was being thus divided,

intimated that if the thieves would give him part of the money he would probably secure bonds for their release in case they should be arrested, and thereupon each of them gave him a handful of the stolen coins; and the police officer, who arrested defendant next morning, testified for the State that he admitted to him that three of the thieves each gave him $20 of the stolen gold, making $60 in the aggregate. *Held,* that the act of defendant in receiving the said $60 did not amount to three separate crimes of receiving stolen money in such small amounts ($20 each) as to constitute only misdemeanors, but it was all one transaction, namely, receiving $60 in response to a joint promise to secure bonds for the thieves in case they were arrested.

3. ———: **Instruction: Declarations Made Out of Court.** On the authority of State v. Creeley, 254 Mo. 382, an instruction telling the jury how to weigh statements proven by the State to have been made by the defendant after the crime was committed, is approved.

Appeal from St. Louis City Circuit Court.—*Hon. Leo S. Rassieur,* Judge.

AFFIRMED.

*John A. Gernez* for appellant.

(1) The failure of the court in its instruction to the jury requiring the receiving to have been done with an unlawful and felonious intent was reversible error. 1 Bish. New Cr. Law, sec. 567-71; 4 Black. Comm. 132; Hughes' Crim. Law, sec. 665; 1 Wharton, Crim. Law, sec. 88; State v. McAdoo, 80 Mo. 219; 1 McClain's Cr. Law, sec. 717; Rapalje on Larceny, sec. 311-316; 2 Bish. Cr. Law, sec. 1138-42; People v. Avilla, 43 Cal. 196; State v. Pelts, 3 Blackf. (Ind.) 28; People v. Johnson, 1 Park. Crim. (N. Y.) 564; People v. Miller, 25 Hun (N. Y.), 473; People v. Chatterton, 15 Abb. Prac. (N. Y.) 147; People v. Hartwell, 166 N. Y. 361; State v. Rushing, 69 N. C. 29; State v. Caveness, 78 N. C. 484; State v. Crawford, 39 S. C. 343; State v. Hurrell, 5 Humph. (Tenn.) 68; State v. Rice, 3 Heisk. (Tenn.) 215; Comm. v. Hey, 32 Gratt.

(Va.) 946; State v. Sweetem, 75 Mo. App. 134. (2) The law of the cases is that when a statute makes criminal an act not *malum in se* or infamous, without requiring the act to be knowingly done, a criminal intent need not be proven, and *contra,* if the offense is *malum in se,* then the criminal intent must be proven. U. S. v. Leathers, 6 Sawy. 17; People v. Goodwin, 62 N. Y. 299; Comm. v. Wentworth, 118 Mass. 441; State v. Hulsett, 41 N. J. L. 552; People v. Adams, 16 Hun, 549. (3) It was error on part of the court to fail to instruct on the petit receiving of stolen goods, in view of the evidence on the part of the State of accused's admissions. State v. Dashman, 153 Mo. 454. (4) Instruction number 5, given by the court, is subject to the criticism that it does not clearly and distinctly indicate that "the proven statements or declarations of the accused" referred to were "made out of court." State v. Lewis, 248 Mo. 508; State v. Hudspeth, 150 Mo. 28; State v. Hollingworth, 156 Mo. 185.

*John T. Barker,* Attorney-General, and *W. T. Rutherford,* Assistant Attorney-General, for the State.

(1) The intent with which stolen goods are received is not an element of the offense. State v. Cohen, 254 Mo. 437; State v. Rice, 245 Mo. 167; State v. Smith, 250 Mo. 350; State v. Sakowski, 191 Mo. 635; State v. Richmond, 186 Mo. 171. (2) Defendant's proven admissions were to the effect that out of the fruits of the larceny he received, at the time of the division of the spoils in his saloon, three twenty-dollar gold pieces from each of three of the thieves, thus constituting a single transaction, and therefore there was no petit receiving. Lorton v. State, 7 Mo. 57; State v. Morphin, 37 Mo. 373; State v. Maggard, 160 Mo. 472; State v. Mandich, 24 Nev. 341; People v. Johnson, 81 Mich. 576; State v. Congrove, 109 Iowa,

66; Furnace v. State, 153 Ind. 95; Carl v. State, 125 Ala. 104. (3) Instruction numbered 5, relating to proven statements made by defendant subsequent to the commission of the crime, was correct. State v. Duestrow, 137 Mo. 44; State v. Howell, 177 Mo. 188; State v. Smith, 250 Mo. 350. (4) The witness, George Nicholas, was one of the thieves who committed the larceny and therefore was not an accomplice of defendant in receiving the stolen goods. State v. Cohen, 254 Mo. 437; State v. Shapiro, 216 Mo. 379; State v. Richardson, 248 Mo. 569.

BROWN, J.—Convicted of receiving stolen money and his punishment fixed at two years in the penitentiary, defendant appeals to this court.

On the evening of March 12, 1912, five persons, imbued with a larcenous purpose, assembled at a saloon kept by defendant in what is known as "Kerry Patch" in St. Louis City. Those five persons were: Ned Raftery, Podgy Burns, James Kennedy, Ben Shaw and George Nicholas, the latter a Gypsy boy between sixteen and seventeen years of age. The Gypsy boy informed his associates (Raftery et al.) that his uncle, Milasch Vlado, who lived only a block from the saloon, was possessed of a large amount of gold coin. A scheme was devised to steal Vlado's money, and the five conspirators went to the home of Vlado and stole therefrom about $8000 in gold coin, one revolver and some other articles. There is some evidence that defendant knew that Raftery et al. were going to commit this larceny before the crime was committed, but that point is left a little indefinite. It is, however, conceded that as soon as the five thieves hereinbefore named had stolen Vlado's gold they brought it to defendant's saloon, poured it out upon the floor, where it was divided by each of the thieves grabbing it up as fast as possible.

State v. Powers.

According to the statements of George Nicholas, the Gypsy boy, who gave evidence for the State, when the stolen money was divided the defendant intimated that if they would give him part of the spoils probably he would secure bonds for their release in case they should be arrested. Thereupon each of the thieves gave defendant a handful of the stolen coin; the witness Nicholas giving him $150.

Defendant closed his saloon at one o'clock a. m. on the night the money was stolen, and was arrested in company with Ben Shaw, one of the thieves, about 5:30 next morning when he returned to his saloon.

The police officer who made the arrest testified that defendant admitted to him that three of the thieves each gave him twenty dollars of the stolen gold, making sixty dollars in the aggregate.

As a witness in his own behalf, defendant denied that he received any of the stolen money. He also introduced other evidence, which if true would have justified a verdict of acquittal. It is unnecessary to further discuss the evidence, as defendant does not contend that it was insufficient to support the verdict of the jury. His demand for reversal is based upon certain alleged errors in the instructions to the jury by the trial court.

## OPINION.

I. The first insistence of defendant's learned counsel is that the instruction of the court did not require the jury to find that the defend-

**Receiving Stolen Property: Intent.** ant received the stolen money with a felonious or unlawful intent. He cites numerous authorities, mostly from other States, which will be found in the notes of our official reporter prefixed to this opinion. It was undoubtedly the rule at common law that in cases of this character the burden rested upon the State to prove that the stolen

property was received by the defendant with the felonious intention of depriving, or aiding in depriving, the true owner of his property.   While this was the common law rule, we are not aware of any rule which prevents the General Assembly of our State from restricting the operation of said common law.   This is precisely what was done by the enactment of section 4554, Revised Statutes 1909, whereby a prima-facie case of feloniously receiving stolen goods is made out against the defendant by proof that he received the goods "knowing the same to have been . . . stolen." If defendant received the stolen money with an intention of returning it to the true owner, that was a matter of defense upon which he would have had a right to introduce evidence, and upon the coming in of such evidence the issue of intent could have been dealt with by a proper instruction.   There was no such evidence in this case, and the trial court did not err in omitting it from his instructions.   Such is the rule of this court in State v. Rich, 245 Mo. 162; and in the recent case of State v. Cohen, decided at this term, and officially reported in 254 Mo. 437.

In the absence of countervailing evidence proof of the receiving of stolen property which the recipient knows has been stolen establishes all the criminal intent or felonious purpose required by section 4554, supra.

II.   A further insistence of defendant is that, there being evidence, through defendant's admission to the policeman, that three of the thieves gave defendant twenty dollars each of the stolen gold at the time they brought it to his saloon and divided it, the

**Petit Receiving.** act of defendant in receiving said sixty dollars amounted to three separate crimes of receiving money in such small amounts as to constitute only misdemeanors.   The evidence of the policeman tends to prove that the three coins which defendant admitted having received were part of the

same gold which defendant had the most cogent reasons to know was stolen property. If the sixty dollars had been taken out of the pile of stolen money while it was lying on the floor and given to defendant before the so-called "division" took place, then it could not be claimed that there was more than one receiving. We do not think the situation was changed by the act of the thieves in making the so-called "division." According to the evidence, whatever money was paid to defendant by the thieves was received by him in response to a joint promise to secure bonds for the thieves in case they should be arrested. That promise was apparently made to induce the thieves to turn loose some of Vlado's money which they had in their possession. It was all one transaction, and it would amount to exalting technicalities almost to a point of madness to treat it as three separate crimes. The evidence in the case of State v. Dashman, 153 Mo. 454, tended to show that the defendant in that case was guilty of a different kind of crime from the one charged in the indictment committed at a time subsequent to the one for which he was on trial; consequently, that case is not authority for defendant's contention here.

III. A further insistence of defendant is that the trial court erred in giving instruction numbered 5 for the State, whereby the jury was told how to weigh statements proven by the State to have been made by the defendant after the crime was

**Admissions.**

committed. We find that said instruction numbered 5 is a literal copy of the instruction given for plaintiff in the case of State v. Creeley, recently decided by this court and officially reported, 254 Mo. 382. In the Creeley case we discussed and reviewed instructions of this character from the case of Green v. State, 13 Mo. 276, down to date, and it would add nothing to the cause of jurisprudence to review what was said in affirming the judgment in that case. The giving of

the instruction complained of did not constitute reversible error.

The case was ably defended, and the record contains no reversible error. We, therefore, affirm the judgment. *Walker, P. J.,* and *Faris, J.,* concur.