THE STATE v. HARRY HAMILTON, Appellant.

Division Two, June 5, 1924.

1. **APPELLATE PRACTICE:** Sufficient Evidence: Substantial.  In an action at law the appellate court will not pass upon the weight of the evidence any further than to determine whether the verdict of the jury is supported by substantial evidence.

2. **CARNAL KNOWLEDGE:** Penetration: Proof.  In a prosecution for carnal knowledge, proof of penetration may be established by circumstantial evidence, and slight proof of actual penetration is sufficient.

3. **INSTRUCTION:** Credibility of Witness: False As to One Material Fact.  An instruction on the credibility of the witnesses should not indiscriminately contain the clause that "if you believe that any witness has knowingly sworn falsely to any material fact, you are at liberty to reject all or any portion of such witness's testimony," but where the testimony of defendant as to material facts is at variance with that of other witnesses, the trial court, in the exercise of a sound judicial discretion, may add such clause to the usual instruction.

4. **WITNESS:** Self-Incrimination: Constitutional Exemption: Asserted by Another.  The right of the prosecutrix, who was brought by defendant from another state to this and who with him has been charged in the Federal Court with a violation of the Mann Act, to claim her constitutional privilege of refusing to testify, is a right personal to her, and where she was told of her constitutional privilege before she testified in the trial of defendant, charged with carnal knowledge of her, and declined to claim such privilege, defendant cannot, either at the trial or on appeal, claim it for her;

and being a competent witness for the State an assignment that she was not advised of her constitutional right is without merit.

5. **INSTRUCTION: What Defendant Said Against Himself: Presumed to Be True.** An instruction relating to voluntary statements made by defendant relating to the offense charged in the indictment which tells the jury that "the defendant is entitled to what he said for himself, if true, and the State is entitled to the benefit of anything he may have said against himself in any statement proved by the State; what the defendant said against himself, if anything, the law presumes to be true, unless negatived by some other evidence in the cause, because said against himself; what the defendant said for himself, the jury are not bound to believe, because it was said in a statement proved by the State, but the jury may believe or disbelieve it as it is, shown to be true or false by the evidence in the cause," although given at the request of the State, has been uniformly approved by an unbroken line of decisions in this State for eighty years, and is again approved.

Headnote 1: **Criminal Law**, 17 C. J. sec. 3595. Headnote 2: **Rape**, 33 Cyc. 1487. Headnote 3: **Criminal Law**, 16 C. J. sec. 2442. Headnote 4: **Witnesses**, 40 Cyc. 2548, 2547. Headnote 5: **Criminal Law**, 16 C. J. sec. 2422.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

AFFIRMED.

*William E. Fish* and *Roy A. Fish* for appellant.

(1) The court should have sustained the motion for a new trial as the verdict was against the weight of evidence. (2) The court erred in giving instruction numbered 4, and especially the latter part of said instruction. State v. Mangrum, 245 S. W. 817.

*Jesse W. Barrett*, Attorney-General, and *Robert W. Otto*, Assistant Attorney-General, for respondent.

(1) The court did not err in refusing to advise the prosecuting witness of her constitutional privilege. (a) The privilege against self-incrimination afforded by Article 2, section 23, Constitution of Missouri, is purely per-

sonal to the witness, and the witness cannot claim the privilege of another person. State v. Kennedy, 151 Mo. 268, 285; Hale v. Henkel, 50 Law Ed. (U. S.) 652. (b) One may not raise a question of constitutionality when his personal constitutional rights have not been invaded. Stouffer v. Crawford, 248 S. W. 581, 585; In re Tartar, 278 Mo. 356, 364; State v. Baskowitz, 250 Mo. 82, 89. (2) Proof of penetration may be shown by circumstantial evidence, and the slightest proof of actual penetration is sufficient. State v. Devorss, 221 Mo. 469; State v. Mason, 189 N. W. 452, 453; Hale v. Commonwealth, 244 S. W. 79; State v. McGrath, 193 N. W. 602; Blackmon v. State, 220 S. W. 93; People v. Bernor, 74 N. W. 184; State v. Carnagy, 76 N. W. 805. (3) A conviction for statutory rape may be had upon the uncorroborated testimony of the prosecutrix alone. State v. Wilcox, 111 Mo. 569, 573; State v. Marcks, 140 Mo. 656; State v. Day, 188 Mo. 359; State v. Welch, 191 Mo. 179; State v. Dilts, 191 Mo. 665; State v. Tevis, 234 Mo. 276; State v. Stackhouse, 242 Mo. 444, 449. (4) Where there is sufficient evidence to sustain the verdict this court will not interfere as the weight of the evidence is for the jury. The testimony was sufficient to make a case for the jury and sustain the verdict. State v. Hammontree, 177 S. W. 369; State v. Belknap, 221 S. W. 45; State v. Jenkins, 225 S. W. 989; State v. Hightower, 231 S. W. 566. (5) It was the province of the jury to weigh the testimony and determine what credit should be given to the testimony. State v. Hubbs, 242 S. W. 675; State v. Cason, 252 S. W. 689. (6) That part of State's instruction numbered 4 on the credibility of witnesses is in proper form and has often been approved by this court. Gillette v. Wimer, 23 Mo. 77; State v. Dwyer, 25 Mo. 553; State v. Wright, 134 Mo. 404; State v. Hudspeth, 159 Mo. 178, 201; State v. Swisher, 186 Mo. 1, 7; State v. Speritus, 191 Mo. 24; State v. Bond, 191 Mo. 555, 830; State v. Barnes, 204 S. W. 266.

RAILEY, C.—On June 2, 1923, the Grand Jury of the City of St. Louis, Missouri, returned in to the cir-

cuit court of said city, an indictment, charging appellant Hamilton with statutory rape on Bessie Carter, a female child under the age of sixteen years, in the city of St. Louis aforesaid. The indictment further charges that said defendant did unlawfully and feloniously make an assault on said Bessie Carter, and then and there unlawfully and feloniously did carnally know and abuse her. The defendant was formally arraigned, and entered a plea of not guilty.

The case was tried before a jury on June 26, 1923, and, on the same day, the following verdict was returned:

"We, the jury in the above entitled cause, find the defendant guilty of rape, as charged in the indictment, and assess the punishment at imprisonment in the penitentiary for (10) years."

A motion for a new trial was filed and overruled. Thereafter, allocution was granted defendant, the motion for a new trial overruled, judgment rendered, sentence pronounced in accordance with the terms of the verdict, and an appeal was granted said defendant to this court.

The evidence on behalf of the State tends to show that Bessie Carter, an unmarried female of the age of fifteen years, on October 29, 1922, was living with her mother at Alton, Illinois; that she met the defendant, Harry Hamilton, about September or October, 1922, and continued to meet him thereafter on occasions when she would happen to go down town; that on March 31, 1923, she accompanied the defendant to St. Louis, Missouri, arriving at the latter place about ten o'clock at night; that the defendant took her to the Portola Hotel in said city, on said night, and registered as "Mr. and Mrs. Thocker;" that they were assigned to Room 18 in said hotel; that after arriving at said room, defendant insisted on Bessie Carter going to bed, which she did; that during the night, the prosecutrix awakened, found the defendant undressed and lying beside her in bed; that during the night defendant "did something to her;"

that while defendant was on top of her, she felt something in her private parts, but did not know that it was defendant's private parts; that she testified before the grand jury that "defendant woke her, and had intercourse with her;" that on cross-examination, she testified, she did not know "if what she felt in her private parts was the private parts of the defendant or his finger;" that about three-thirty in the morning of April 1st, a police officer knocked at the door of Room 18, where she had stayed and was admitted by the defendant, or by use of a pass key; that defendant gave his correct name to said officer and prosecutrix gave her correct name; that when the police officer entered said room, the defendant was dressed in his underwear, and when asked who the prosecutrix was stated she was his sister. The prosecutrix was further interrogated as to her testimony before the grand jury as follows:

"Q. Were you asked, 'Did he put his private parts in yours? A. Yes, sir'? Do you remember how you answered it? A. Yes, sir.

"THE COURT: Do you remember now that he did or not? A. Yes, sir.

"MR. JOHNSTON: Q. Do you remember did you bleed any that night? A. No, sir.

"Q. Did it hurt you? A. Yes, sir.

"Q. Where did you hurt—in your private parts? A. Yes, sir."

Defendant's evidence is substantially as follows: That Bessie Carter lived with her mother in Alton, Illinois; that the mother had known defendant since December 1, 1922, and that he frequently called at her home; that he (defendant) asked the mother for permission to marry Bessie Carter, the prosecutrix, and the mother consented to the marriage; that defendant and prosecutrix came to St. Louis for the purpose of being married; that defendant took prosecutrix to the Portola Hotel upon arriving at St. Louis about ten o'clock at night; that after their arrival, defendant and prosecu-

trix went to the City Hall to obtain a marriage license, but found the building closed; that he registered under the assumed name of Thocker for himself and prosecutrix; that they then went upstairs to Room 18, and Bessie Carter went to bed first; that she did not take off any of her clothing except her shoes. Defendant testified that he did not take off any of his clothes, but just laid down on the bed with his clothes on; that he loved the prosecutrix, expected to marry her, and was still willing to marry her; that he did not have intercourse with prosecutrix, nor touch her that night.

The remaining questions presented by the record will be considered in the opinion.

I. Appellant in his brief makes but two assignments of error as follows: "First. The court should have sustained the motion for a new trial, as the verdict was against the weight of evidence."

Sufficient Evidence.

This court from its earliest history to the present time has held with marked unanimity, that in actions at law brought here by appeal, it will not pass upon the weight of the evidence before the jury, except in so far as to determine in a case of this character, whether the verdict of the jury is supported by substantial evidence. [Burtch v. Ry. Co., 236 S. W. (Mo.) l. c. 340; Barnett v. Hastain, 256 S. W. (Mo.) l. c. 752, and cases cited.] The appellant interposed no demurrer to the evidence at the conclusion of either the State's case, or at the conclusion of the whole case. He does not allege in his assignment of errors that the trial court should have directed a verdict of acquittal. He simply asserts that his motion for a new trial should have been sustained, because it charges that the evidence failed to show the male organ of defendant penetrated the female organ of prosecutrix. Having carefully read the entire record and briefs in the case, we will consider the above assignment as though the question involved therein was properly presented for our consideration.

In considering the testimony relating to the subject of penetration, we should keep in mind the facts as they were presented to the jury. The prosecutrix was the first witness put upon the stand by the State and, after testifying that her name was Bessie Carter and that she lived at Alton, Illinois, here is what her counsel, also representing the defendant herein, said to the court and jury:

"Mr. Fish: If the court pleases, we want to make a short statement. The mother of this girl and the father of this girl have retained me as her attorney, to defend her in the Juvenile Court, and also in the United States Court, where a charge on the Mann Act is pending against the prosecuting witness and the defendant, and as her attorney, I want to now advise her of her constitutional rights; that is, that she doesn't have to testify here in this case unless she wants to; that she claims her constitutional rights, on the ground that anything she said here might incriminate her in some other court; and that she does not have to testify at this time unless she wants to testify, and can refuse to testify in this case. . . .

"Mr. Fish: Q. You understand, Bessie, if you don't want to testify you don't have to. . . .

"Mr. Fish: I am her attorney and acquainting her with her constitutional rights, and of course she can do as she pleases."

The witness continued her testimony heretofore set out, without claiming any personal privilege. The jury had the right to consider the above suggestions of Mr. Fish, in determining whether the prosecutrix told the whole truth in regard to penetration, when she was in bed with defendant, in a darkened room, with the defendant on top of her, with his finger or penis in her female organ, etc.

Why did the defendant and prosecutrix leave Alton, a city of 25,000 inhabitants, after night, and come to St. Louis when they could have married at Alton, and

saved the mother of the girl the trouble and expense of coming to St. Louis to witness the wedding? Why did they go to the City Hall at ten o'clock at night for a marriage license, when they must have known that said building would be closed? Why did the defendant register himself and the girl as husband and wife under an assumed name? Why did the defendant, when caught by the police officer in the room with the girl, and with his clothes off, tell the officer that Bessie Carter was his sister? What was there to prevent the defendant from having sexual intercourse with prosecutrix under the circumstances aforesaid, when he was on top of her, in position to perform the operation, without any resist- ance being offered by the girl, although she knew her private parts were being injured by defendant and he was causing her pain? We are of the opinion that the foregoing facts and circumstances warranted the jury in finding that defendant on the night of March 31, 1923, had sexual intercouse with the prosecutrix, Bessie Car- ter, in St. Louis, Missouri. Proof of penetration may be shown by circumstantial evidence, and slight proof of actual penetration is sufficient. [22 R. C. L. sec. 7, page 1177; State v. Devorss, 221 Mo. 469; State v. Williams, 263 Mo. 1. c. 608, 173 S. W. 1. c. 1052; Taylor v. State, 111 Ind. 279; People v. Crowley, 102 N. Y. 234; State v. Hargrave, 65 N. C. 466; State v. Depoister, 21 Nev. 107; Hale v. Commonwealth, 244 S. W. (Ky.) 1. c. 79; State v. McGrath, 193 N. W. 1. c. 602; People v. Bernor, 74 N. W. (Mich.) 184; State v. Carnagy, 76 N. W. (Ia.) 805; State v. Mason, 189 N. W. 1. c. 453; Kenney v. State, 79 S. W. (Tex.) 817; Blackmon v. State, 220 S. W. (Tex.) 93.]

The foregoing authorities, especially those outside of our State, clearly sustain the finding of the jury on the facts aforesaid, as to penetration. We gather from these authorities that penetration, however slight, is suffi- cient, and that it may be shown from facts and circum- stances detailed in evidence as developed in this case.

Taking the testimony of the prosecutrix at its face value, it would be a reflection on the credulity of the jury, who tried this case, to hold that they had any doubt about defendant having had sexual intercourse with prosecutrix when he was on top of her in the nighttime under the circumstances aforesaid. The court instructed the jury as to the law relating to an assault with intent to commit rape and authorized the jury, among other things, if the evidence warranted a conviction under this charge, to even impose a fine of $100 on defendant.

It is manifest, however, from reading the record, that the jury believed the defendant brought the prosecutrix to St. Louis for assignation purposes, and that he had sexual intercourse with her in Room 18 aforesaid, at the time and place charged in the information. The evidence was sufficient to warrant the jury in reaching this conclusion. The foregoing assignment of error is accordingly overruled.

II. The second assignment of error in appellant's brief reads as follows: "The court erred in giving Instruction No. 4, and especially the latter part of said instruction." The portion complained of appears at the conclusion of the last paragraph of instruction No. 4, which reads as follows:

"You are further instructed that you are the sole judges of the credibility of the witnesses and of the weight to be given to their testimony. In determining such credibility and weight you will take into consideration the character of the witness, his or her manner on the stand, his or her interest, if any, in the result of the trial, his or her relation to or feeling towards the defendant or towards the prosecuting witness, the probability or improbability of his or her statements, as well as all the facts and circumstances given in evidence. *In this connection you are further instructed that if you believe that any witness has knowingly sworn falsely to any material fact, you are at liberty*

Falsus
in Uno.

*to reject all or any portion of such witness's testimony.*" (Italics ours.)

The complaint is leveled at the *italicised* portion of said instruction. It may be conceded at the outset, that the above instruction should not be given indiscriminately, but only where there is evidence in the cause which would warrant the court, in the exercise of a sound judicial discretion, in giving same. The testimony of the defendant heretofore set out is so at variance with that given by other witnesses in regard to material facts, that a typical case is here presented for the giving of this instruction, if its validity can be upheld under the established rules of legal procedure in this State. *Falsus in uno, falsus in omnibus,* is recognized as one of the leading maxims of legal jurisprudence. From the early history of our State to the present time, the principle of law announced in the above maxim has been thoroughly recognized as being properly presented in the italicised portion of the instruction complained of in this case. It is not only called into requisition by the State, as in this case, but *more frequently* by the defense in both civil and criminal actions. In the case of State v. Mix, 15 Mo. l. c. 159, the court, at the instance of the State, over defendant's objection, gave Instruction 6, which reads as follows:

"If the jury believe from the evidence that McAfee, or any other witness, has willfully and knowingly testified falsely to any material fact in the cause, they are at liberty to reject the whole or any part of the testimony of such witness, *which is inconsistent with other truthful evidence in the cause.*" (Italics ours.)

The court refused Instruction 7, as asked by defendant, as follows:

"If the jury believe from the evidence that the witness, McAfee, willfully testified falsely to any material fact in the case, they are authorized to discredit and reject the whole of his testimony."

The case upon both sides was represented by able lawyers, and Judge RYLAND, after due consideration, re-

versed and remanded the cause, on account of the *giving* of said Instruction 6, and *refusal* of said Instruction 7. The established principle of law in this State as above indicated, has been strictly followed since the above decision, as shown by the following cases: Gillett v. Wimer, 23 Mo. l. c. 78; State v. Dwire, 25 Mo. 553; Paulette v. Brown, 40 Mo. l. c. 57; State v. Elkins, 63 Mo. l. c. 166; Brown v. H. & St. J. R. R. Co., 66 Mo. l. c. 599-600; State v. Patrick, 107 Mo. l. c. 162; McFadin v. Catron, 120 Mo. l. c. 270; State v. Wright, 134 Mo. l. c. 406; State v. Hudspeth, 159 Mo. l. c. 200-208; State v. Swisher, 186 Mo. l. c. 7; State v. Bond, 191 Mo. l. c. 561, 90 S. W. 830; State v. Feeley, 194 Mo. l. c. 323; State v. Shelton, 223 Mo. l. c. 138-9; State v. Barnes, 204 S. W. (Mo.) l. c. 266; State v. Barnes, 274 Mo. 625, 204 S. W. 267; State v. Marlin, 259 S. W. (Mo.) l. c. 434.

It will be observed from reading the above authorities, that the instruction complained of here has been recognized as proper in an unbroken line of decisions running through a period of more than seventy years. We are now asked by counsel for appellant to overturn this elementary principle of law in our State, on the strength of the opinion of the Supreme Court of Arkansas in Mangrum v. State, 245 S. W. 816, and following. The rule of law declared in the Arkansas cases, has been especially considered by this court in State v. Mix, 15 Mo. l. c. 159; Brown v. Railroad Co., 66 Mo. l. c. 599-600; State v. Patrick, 107 Mo. l. c. 162; and in State v. Barnes, 204 S. W. (Mo.) l. c. 266. In each of these cases, as well as in the others cited, we refused to follow the rule established in our sister State of Arkansas, and adhered to the Missouri rule, as declared in the foregoing cases. The above assignment is likewise overruled.

III. No other alleged errors are complained of in appellant's brief. No motion in arrest of judgment was filed, nor is there any complaint against the sufficiency of the information or the verdict of the jury.

IV.   In the motion for a new trial, it is asserted, that the prosecutrix should have been advised as to her constitutional rights, in regard to testifying as a witness for the State.   She was advised by appellant's counsel that she could not be compelled to testify as a witness for the State.   She claimed no privilege of that kind in the court below, and is asserting none here.   The question as to whether she could be compelled to testify might have been presented by her as a personal privilege, but the defendant is in no position to assert that right in his behalf.   She was not the defendant's wife, and was a competent witness for the State.   The defendant might have refused to testify as to those matters which were calculated to incriminate him, but he cannot assert in his behalf, a personal privilege that belonged alone to prosecutrix.   [8 Cyc. 791; State ex rel. v. McIntosh, 205 Mo. l. c. 604-5; Greene County v. Lydy, 263 Mo. l. c. 87.]

*Constitutional Privilege.*

V.   Complaint is made in the motion for a new trial, as to instructions numbered 1, 2 and 3, given by the court. Those numbered 1 and 2, correctly state the law in regard to rape, and an attempt to commit a rape.   Under the latter, the jury was authorized, if the evidence warranted it, to simply impose upon defendant a fine of one hundred dollars.   The authorities cited by the State fully support the correctness of both of said instructions, and as no specific objection is pointed out as to either we have not deemed it necessary to consider the matter further.

*Instructions.*

VI.   Instruction 3, given by the court, is also complained of in the motion for a new trial, but no specific objection is lodged against it, nor is any error assigned in appellant's brief in regard to said instruction.   It reads as follows:

"If you believe and find from the evidence that the defendant made any voluntary statement or statements

in relation to the offense charged in the indictment after

**What Defendant Said Against Himself.**

such offense is alleged to have been committed, you must consider such statement or statements all together, and in the light of the circumstances under which you may believe they were made. The defendant is entitled to what he said for himself, if true, and the State is entitled to the benefit of anything he may have said against himself in any statement or statements proved by the State. What the defendant said against himself, if anything, the law presumes to be true, unless negatived by some other evidence in the cause, because said against himself. What the defendant said for himself, the jury are not bound to believe, because it was said in a statement or statements proved by the State, but the jury may believe or disbelieve it as it is shown to be true or false by the evidence in this cause; it is for the jury to consider, under all the facts and circumstances in evidence, how much of the whole statement or statements of the defendant proved by the State, the jury, from the evidence in this case, deem worthy of belief."

This instruction, like that part of Number 4, heretofore considered, has been recognized as a proper declaration of law, in cases of this character, from the early history of the State to the present time. [State v. McCleave, 256 S. W. (Mo.) l. c. 816; State v. Long, 253 S. W. (Mo.) l. c. 732; State v. Johnson, 252 S. W. (Mo.) l. c. 625; State v. Parr, 246 S. W. (Mo.) l. c. 905; State v. Glazebrook, 242 S. W. (Mo.) l. c. 933; State v. Schnurr, 285 Mo. l. c. 76, 225 S. W. 678; State v. Wansong, 271 Mo. l. c. 60, 195 S. W. l. c. 1002-3; State v. Simenson, 263 Mo. l. c. 267-8, 172 S. W. 601; State v. Powers, 255 Mo. l. c. 269, 164 S. W. 466; State v. Creeley, 254 Mo. l. c. 395, 162 S. W. 737; State v. Davis, 226 Mo. l. c. 511; State v. Knowles, 185 Mo. l. c. 176; State v. Darrah, 152 Mo. l. c. 541; State v. Young, 119 Mo. 495, l. c. 524; State v. Brown, 104 Mo. 365; State v. Curtis, 70 Mo. l. c. 596-7; State v. West, 69 Mo. 406; State v. Carlisle, 57 Mo. l. c. 106; Green v. State, 13 Mo. l. c. 392.]

In State v. Knowles, 185 Mo. 1. c. 176, an instruction like the one at bar was set out in full. GANTT, J., in considering same, said: *"This instruction has been so often challenged and as often approved that we must decline to again discuss it."* (Italics ours.)

Some of the other authorities cited made the same announcement. With a uniform line of decisions holding the same way, through a period of over eighty years, we think the book should be closed as to the validity of the instruction under consideration; and that it should no longer be considered a *debatable* question, in the absence of legislative enactment on the subject.

VII. We have not only considered the two assignments of error made by appellant, but have *carefully* read the instructions and all the testimony in the case. We find, that the instructions were as favorable to defendant as he had any legal right to expect. No error was committed by the court, to the prejudice of appellant, in the admission or rejection of testimony. We are of the opinion, that he received a fair and impartial trial before an intelligent jury, and was *legally* convicted upon *substantial* evidence. The judgment below is accordingly affirmed. *Higbee, C.,* concurs.

Conclusion.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.