STATE of Missouri, Respondent,

v.

Jess Soloman IVEY, Appellant.

No. 45385.

Supreme Court of Missouri,
Division No. 2.

June 10, 1957.

Rehearing Denied July 8, 1957.

Charles M. Shaw and Wayne C. Smith, Jr., Clayton, for appellant.

John M. Dalton, Atty. 'Gen., and W. Don Kennedy, Asst. Atty. Gen., for respondent.

STORCKMAN, Judge.

The defendant, Jess Soloman Ivey, was convicted of the crime of statutory rape with which he was charged pursuant to Section 559.260 RSMo 1949, V.A.M.S. The jury assessed his punishment at imprisonment in the penitentiary for a term of 35 years and he was sentenced accordingly.

The victim of the alleged offense was a 15 year old girl in the eighth grade of the school she was attending. The girl, when offered as a witness by the state, was asked qualifying questions by the court and counsel. Her responses indicated that she was mentally retarded and the court ruled her to be incompetent as a witness. In order to avoid giving further and needless notoriety to the unfortunate victim of this

calamitous happening she will not be referred to by name in this opinion.

The defendant was married to a sister-in-law of the child's mother. The girl lived with her mother, a widow, and their home was next door to that of the defendant. The evidence of the state tended to show that during the afternoon of March 21, 1955, the defendant was drinking beer in a tavern in St. Louis County and had consumed five or six bottles. Sometime after 3:00 o'clock p. m. the defendant left the tavern and drove his automobile to the opposite side of the street where he intercepted the child as she was coming home from school. He talked with her briefly, after which she got into the passenger side of his automobile and was driven away. He was driving a 1947 model Cadillac convertible with a cloth top. At about 4:00 o'clock that afternoon two deputy sheriffs of St. Louis County, cruising in a patrol car, saw defendant's automobile parked on a secluded road in St. Louis County. The defendant's car was headed east and the deputies were driving west.

The deputies drove up beside the defendant's car and stopped. The girl and the defendant were lying face to face on the front seat. The girl was on her back and the defendant was on top of her. When he saw the deputies the defendant quickly got off of the girl and seated himself on the passenger's side of the front seat, closing the fly of his trousers as he did so. After some interrogation the deputies put the girl in their car and drove her to her home. The defendant drove ahead of them to his home. When the deputies and the girl told her mother what had occurred, the mother requested that the defendant be prosecuted. He was then arrested and charged with statutory rape. At 5:55 o'clock the same afternoon, the girl was examined at the St. Louis County Hospital. The examination disclosed a laceration of her hymen about one centimeter or a half-inch long.

■ The defendant did not testify at his trial and offered no evidence in his behalf. On this appeal he first contends that his motion for judgment of acquittal should have been sustained because "there is no competent evidence of probative value to show that defendant ever carnally knew a female under the age of 16 years in that there is no evidence from which the jury could find penetration." The defendant points out that the deputy sheriffs, who were the only eye witnesses to the events which occurred in defendant's automobile, testified that they did not see the defendant's private parts and could not definitely state that he had sexual intercourse with the girl.

In support of this contention the defendant cites State v. De Moss, 338 Mo. 719, 92 S.W.2d 112. We need not undertake to detail all of the facts of that case. It is sufficient to say that the defendant and the prosecuting witness, age 14, were married before the trial and when she was put on the stand by the state she denied that the defendant had had sexual intercourse with her on the occasion in question or at any time before their marriage. The defendant also took the witness stand and denied that he had had sexual intercourse with the prosecuting witness at any time before their marriage. As the case went to the jury, practically the only evidence the state had to rely upon was the testimony of a 9 year old sister of the prosecuting witness as to the actions of the defendant who was in bed with her and her sister at the time in question. On appeal this court held the evidence of penetration was insufficient and reversed the case. However, the De Moss case recognizes that the proof of this issue may be made by circumstantial evidence, stating, 92 S.W.2d 113: "It is essential, in order to constitute the crime of rape, that there be penetration of the female organ by that of the male. The penetration need be but slight, but there must be penetration to some extent, and proof that there was such penetration must be adduced. We have held that such proof may be by circumstantial evidence. State v. Hamilton, 304 Mo. 19, loc. cit. 26, 263

S.W. 127, 128. But, as generally, where the evidence is circumstantial, the proof must not only be consistent with the defendant's guilt, but must be inconsistent with any reasonable hypothesis of his innocence." State v. Hamilton, 304 Mo. 19, 263 S.W. 127, 129, succinctly states the rule in this manner: "Proof of penetration may be shown by circumstantial evidence, and slight proof of actual penetration is sufficient."

■ Because of the question presented, a more detailed recital of the evidence on this issue becomes necessary. Deputy Sheriff William Thomas Owens testified that as he approached the defendant's automobile he saw defendant in a prone position "on top of a little girl." He drove the patrol car up alongside of defendant's car and jumped out to investigate. There was nothing to obscure his vision. The defendant "was getting off of her very rapidly and the girl was laying on her back with her legs extended upward and apart." When the defendant got off of the girl he seated himself on the right side of the front seat, zipping up his pants as he did so. The girl's underpants were hanging on her left leg around the knee. Her dress was up around her waistline and her body was exposed from her raised dress down to her knees. He saw blood on her pants and on her slip. The girl was crying and seemed to be frightened. She said that she had "told Mr. Ivey her mother would be mad at her." It was hard for the deputy to understand her but she kept muttering "in her crying, her mother is going to be mad at her." In response to a question with respect to what he had been doing, the defendant told the deputies that "the girl's mother had told him to bring the girl out there and teach her the facts of life and show her what to expect if any boys ever went out with her." There was a hole in the top of the defendant's convertible and the defendant told the officers that "it had been kicked out by the girl." Later he told these same deputies that "he was just driving through there and he noticed the girl had been kicked out of a red truck and he didn't pursue the truck but he put her in the car and was trying to console her."

Deputy Sheriff Hugh Bresnahan testified that he interrogated the defendant on March 22, 1955, and that the defendant told him that the girl got out of a red pickup truck and resisted his efforts to take her home. The witnesses' testimony then was: "He [the defendant] further stated that he put her in his car and she was all cramped up, and he stated it happened three or four times and the last time he also got in the passenger side and as he was trying to hold her down the deputy car pulled up and found him holding her down on the seat. He said that she kicked a hole in the canvas roof of his car." The defendant further told Bresnahan that he did not have intercourse with the girl, that he was incapable of the act and had not had sexual intercourse in five years. He said he was just trying to hold her down, that she was trying to jump out of the car.

The evidence clearly proves that defendant was present at the scene of the alleged crime and in such a position with respect to the girl that it was physically possible for him to perform an act of sexual intercourse with her. We believe the evidence is equally clear that the defendant accomplished a penetration sufficient to support his conviction.

Dr. Ernst Schroeder, one of the examining physicians at the St. Louis County Hospital, testified that he found "little bloody spots" on the girl's underpants. There was a small scratch on her right thigh which was very minor and did not bleed. The laceration of the hymen was "fresh," by which he meant that it had been made within four to six hours. The laceration was one centimeter in size, a little less than one-half inch. In answer to a hypothetical question based on the facts in evidence the doctor testified that "the most likely cause for that ruptured hymen seems

to be a penetration by a male organ by intercourse" although it could have been caused by an injury or by a finger. The laceration was caused "most probably" by sexual intercourse. This opening would admit of the insertion of two fingers.

Dr. Amtul Mufti, another of the medical examiners at St. Louis County Hospital, inserted a speculum instrument and found that the girl's vaginal cavity was "full of bloody discharge." The cervix, which is the mouth of the womb, was relatively clean, nothing was coming out of it. The external of the hymen "showed a bloody discharge stain with a slight laceration * * * one centimeter long which seemed to be fresh." A little bit of blood was oozing from it. In her opinion penetration by a foreign body caused the laceration but she could not say whether the foreign body was a male organ or a finger. The slide prepared from the vaginal secretion showed no gonococcin infection and no sperm present. There could have been sexual intercourse without sperm being present if the man was sterile.

Dr. R. B. H. Gradwohl, director of the Police Laboratory of the Metropolitan Police Department of St. Louis, on March 29, 1955, examined stains found on the girl's underpants and slip. He made chemical tests which indicated the presence of seminal fluid on both garments. After seminal fluid on garments is dried out it is very difficult to find spermatozoa and none was found on these. No test was made to determine whether the other spots were blood.

The evidence of penetration is not only substantial and sufficient for a jury case, but it is highly persuasive. The requirements of the rule with respect to the proof of this issue by circumstantial evidence were fully met. The court correctly denied defendant's motion for acquittal. In State v. Hamilton, 304 Mo. 19, 263 S.W. 127, a conviction was sustained where the girl testified she did not know if what she felt in her private parts was the private parts of the defendant or his finger.

The defendant next contends that the trial court committed prejudicial error in failing to declare a mistrial because of the failure of the state to prove that the defendant had previously been convicted of felonies. The amended indictment upon which the defendant was tried alleged previous convictions under the habitual criminal statute, §§ 556.280 and 556.290. One of the prior felony convictions alleged was for burglary in Allen County, Indiana, and the other was for felonious assault in Stoddard County, Missouri.

On voir dire examination the prosecuting attorney informed the jury that the indictment charged the defendant "with statutory rape and two prior convictions for felonies." The defendant did not object to this reference. During the course of the prosecutor's opening statement the following occurred: "Mr. Eskeles [for the state]: * * * The State of Missouri, by Indictment, charged Jess Ivey with having been convicted on the 5th day of May, 1932,—Mr. Shaw [for the defendant]: If the Court please, I am going to object and ask that the jury be instructed to disregard it for the reason that having been convicted twenty years ago is not a crime and is not charged, that in itself is not an offense and the statement is improper and prejudicial. The only reason to make it is to improperly influence the jury against the defendant. There is no such offense of having been previously convicted of anything. The Court: Well, I think the prosecuting attorney should, in his opening statement, address himself first to the offense immediately under trial. Mr. Eskeles: I will withdraw the statement, your Honor, and proceed with the issues. Mr. Shaw: I am going to ask for a mistrial and that the jury be discharged. The Court: The motion is overruled. The Court has ruled that the prosecuting attorney should address himself first to the alleged offense that is presently before the jury. That should

be the first matter in the statement, and the jury will dismiss from their minds the statement thus far concerning any other alleged offense. All right, proceed. * * "

When the state offered in evidence the records of the previous convictions, the court sustained defendant's objection on the ground that the records were not properly certified and authenticated. The contents of these exhibits were not disclosed in the jury's presence. The correctness of the court's ruling in excluding these exhibits is not before us. However, if the attestation of the records was deficient it was not glaringly so.

 A defendant is not entitled to a new trial merely because the state fails in an honest effort to prove prior felony convictions. The statutes express no such intention and we do not so construe them. Any disadvantage that may result to a defendant in such a situation inheres in the attempt to apply the habitual criminal statute and alone does not constitute reversible error. State v. Mosier, Mo., 102 S. W.2d 620, 623; State v. Davis, Mo., 251 S.W.2d 610, 614.

The defendant does not charge the prosecuting attorney with bad faith in pleading and undertaking to prove the prior convictions. The record clearly shows there would be no basis for such a charge. The prosecuting attorney abided by the court's ruling and admonition. The prosecutor handled the offer of the records as exhibits with circumspection so that the nature and contents of the exhibits were not disclosed to the jury. The prosecuting attorney's good faith in the matter is apparent from the record. Since there is no showing of unusual circumstances such as bad faith on the part of the state in failing to make proof of the prior convictions, the trial court did not err in refusing to declare a mistrial. State v. Mosier, supra; State v. Davis, supra. Such matters are largely within the trial court's discretion and its rulings will not be disturbed absent a showing of abuse of its discretion. State v. Frazer, 363 Mo. 77, 248 S.W.2d 645, 647; State v. Christian, Mo., 245 S.W.2d 895, 900. Additionally, the defendant himself injected the question of his prior convictions and good character during the cross-examination of five of the witnesses for the state. On the record there was no abuse of the court's discretion.

The defendant was well represented by able counsel. He received a fair trial and the jury's verdict is responsive to the charge.

No error appearing, the judgment is affirmed.

All concur.